**Bertram N. PERRY, Plaintiff,**

v.

**Alvin GOLUB et al., Defendants.**

**Civ. A. No. 75–G–1476–S.**

United States District Court,
N. D. Alabama, S. D.

Nov. 30, 1976.

See also, D.C., 400 F.Supp. 409.

362

William F. Gardner, Cabaniss, Johnston, Gardner, Dumas & O'Neal, Birmingham, Ala., for plaintiff.

Edward H. Levi, Atty. Gen., John J. Pagano, Office of Gen. Counsel, Equal Employment Opportunity Commission, Washington, D. C., Joseph L. Battle, Huntsville, Ala., Margaret A. Beller, Washington, D. C., Edward Still, Birmingham, Ala., Nicholas M. Inzeo, II, Equal Employment Opp. Comm., Washington, D. C., for defendants.

## ORDER

GUIN, District Judge.

This cause came on for hearing before the Court on November 22, 1976 on the plaintiff's Rule 37(b) motion to dismiss or strike the defendants' "Petition for Permission to Process Adverse Action Against Bertram Perry." At the same time, the Court has considered the question of the extent to which there remains an actual controversy in this case. Based on the factual circumstances here present, the Court finds as follows:

### I.

### RULE 37(b) MOTION

A. FACTS:

The facts relative to this subject are the following:

1. On September 20, 1976, the defendants filed their "Petition for Permission to Process Adverse Action Against Bertram Perry." On the same day, the Court held a conference with counsel for the plaintiff and defendants and set the Petition for hearing on the earliest open date, which was November 22, 1976.

2. On September 23, 1976, the plaintiff filed a Request for Production of Documents under Rule 34 with reference to the defendants' Petition.

3. On October 8, 1976, which was the date set for the production of the documents, the plaintiff's attorney telephoned the defendants' attorney to inquire whether the documents would be produced that day. The defendants' attorney replied that it would be another ten days before the documents would be ready, and the plaintiff's attorney agreed that this would be satisfactory. (The contention that the defendants' attorney understood from this conversation "that no strict deadlines were required" is true only to the extent of the plaintiff's agreement to another ten days for the production of documents).

4. After the documents were not produced within this period, the plaintiff filed a motion to compel production. Since the defendants' Petition was set for hearing on November 22, 1976 and the documents were needed without delay for the plaintiff's preparation for the hearing, the Court took immediate action on the plaintiff's motion. Accordingly, by Order entered on October 26, 1976, the Court ordered the production of the documents by November 1, 1976.

5. On November 3, 1976, the defendants filed with the Clerk of the Court their "Answer to Request for Production of Documents" stating that certain of the documents were being produced but refusing to produce the documents called for by Paragraph 5 of the Request for Production on the asserted grounds that such documents were irrelevant and privileged. On the same date, the defendants filed a motion for protective order against the production of these documents.

6. On November 4, 1976, the Court cancelled the hearing on the defendants' Petition and set for hearing on November 22, 1976 the plaintiff's motion under Rule 37(b) for the dismissal or striking of the Petition

and any other discovery motions which might be pending.

7. The documents which were produced by the defendants were produced on November 3rd and 8th.

8. The defendants only partially complied with other paragraphs of the Request for Production. With respect to Paragraph 2, which requested all documents as to all adverse actions proposed or initiated by the EEOC from 1965 to the present, the defendants produced, on November 8, 1976, copies of "Standard Form 50" giving notice of adverse actions, but none of the underlying documentation was produced. With respect to Paragraphs 3 and 4, which requested all documents containing proposals for adverse actions and complaints or requests for investigation as to EEOC employees, the defendants produced no documents on the asserted ground that no such files were maintained. At the hearing, it developed that the documents requested by Paragraphs 2, 3, and 4 do exist but are maintained in various EEOC offices and that the defendants had taken steps to collect the documents, although none have been produced.

9. Until the November 22nd hearing, the defendants' position was that the documents called for by Paragraph 5 of the Request for Production would not be produced. At the hearing, the defendants announced that while they still objected to the production of the documents, they would produce the documents if the Court so ordered.

10. On the same day, however, the defendants sought to attach certain conditions to production of the documents. By letter dated November 22, 1976 and written after the close of the hearing, counsel for the defendants asked that the Court place the following restrictions on the production of the documents:

"1. Disclosure limited to Counsel for Plaintiff Bertram Perry.

2. No reproduction of the 'Audits' without the specific authorization of the Court or Counsel for the EEOC.

3. Counsel should be prohibited from discussing the contents of the 'Audits' with Plaintiff or anyone else."

**B. ANALYSIS:**

*1. Effect of the failure to file a timely objection :*

■ It is clear that the defendants' failure to file timely objections to the Request for Production constituted a waiver of the objections. E. g., *United States v. 58.16 Acres of Land*, 66 F.R.D. 570 (E.D.Ill.1975) ("an objection that the information sought is privileged, is waived by a failure to make it within the proper time limits"); *Davis v. Romney*, 53 F.R.D. 247 (E.D.Pa.1971) ("If discovery rules are to have 'any effect or meaning, the failure to serve such objections within the time prescribed * * * should be considered a waiver of such objections' "); *American President Lines v. Hartford Fire Insurance Co.*, 55 F.R.D. 61 (E.D.Pa.1971). Similarly, the defendants' protective order motion does not alter the situation, since Rule 34 required that the point be raised by timely objections. As Professor Moore says, "The party served with the request must respond to it within the time limits set forth in the Rule, or object, stating the reasons for the objection." 4A *Moore's Federal Practice* ¶ 37.02, page 36–37 (2nd ed. 1975).

*2. Criticism of the Court's Order :*

■ It is argued that the defendants' failure to file timely objections should be excused on the theory that the Court was in error in entering the Order on October 26, 1976 requiring the production of the documents without prior notice to the defendants. The Court finds this argument to be utterly lacking in merit for the following reasons:

To begin with, the argument is irrelevant to the defendants' failure to file timely objections. The defendants made no effort to file any objection before October 26th when the Order was entered, and the Order itself did not prohibit the defendants from filing an objection. It is obvious that the Order had nothing to do with the failure to file timely objections and that the defend-

ants are wide of the mark in seeking to excuse their failure to object by criticizing the Order.

Moreover, the defendants' criticism of the Order disregards the circumstances in which it was entered. When the Court met with counsel for the plaintiff and defendants on September 20, 1976, it was pointed out that the defendants had not responded to the plaintiff's initial Interrogatories and Request for Production filed on March 22, 1976, some six months earlier. At the same conference on September 20th, the plaintiff stated that he would file Interrogatories and a Request for Production addressed specifically to the defendants' Petition, and the Court asked the defendants to answer them as soon as possible in view of the defendants' request for an early hearing on the Petition. The Court was also aware that the documents sought by the Request for Production were considered by the plaintiff to be critical to his defense against the Petition and that when the October 26th Order was entered, less than a month remained before the hearing. It is settled that "A party to an action has the right to have the benefits of discovery procedure promptly, not only in order that he may have ample time to prepare his case before scheduled trial, but also in order to bring to light facts which may entitle him to summary judgment or induce settlement prior to trial." *United States v. Continental Casualty Co.*, 303 F.2d 91 (4th Cir. 1962). Given the circumstances which existed in this case, the Court was clearly entitled to enter the Order immediately.

It is also argued that the Order came before the expiration of the period for the filing of the defendants' response to the Production Request. But the facts are that the defendants had until October 26th to file a response and did not do so.[1] Moreover, the event which led to the motion to compel production was the fact that the defendants did not carry out their representation of October 8th that the documents would be produced in 10 days.

*3. The appropriate sanction :*

■ Rule 37(b) provides that "If a party—fails to obey an order to provide or permit discovery,—the court in which the action is pending may make such orders in regard to the failure as are just", including "An order striking out pleadings" and "dismissing the action or proceeding or any part thereof". It is well settled that the appropriate sanction is to be determined in the context of the particular facts of the case, with the Court's discretion guided by the standard of the sanction which is just in light of the facts.

■ It should initially be said that this is not a case in which a party attempted in good faith to comply with a Court order but was unable to do so because of circumstances beyond its control. E. g., *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) ("petitioner's failure to satisfy fully the requirements of this production order was due to inability fostered neither by its own conduct nor by circumstances within its control"); *Dorsey v. Academy Moving & Storage, Inc.*, 423 F.2d 858 (5th Cir. 1970) (plaintiff's failure "was due to inability fostered neither by its own conduct nor by circumstances within its control"); *Bon Air Hotel v. Time, Inc.*, 376 F.2d 118 (5th Cir. 1967) ("This record compels the conclusion that petitioner's failure to comply was due to inability brought about neither by its own conduct nor by circumstances within its control").

In this case, the plain fact is that after filing the out-of-time objection, the defendants flatly refused to comply with the Court's Order. Compare *United States v. Wright Motor Co.*, 536 F.2d 1090 (5th Cir. 1976) (dismissal for refusal to answer deposition questions); *Romari v. United States*, 531 F.2d 296 (5th Cir. 1976) (dismissal for refusal to answer deposition questions); *United States v. Cotton Valley Operators Committee*, 9 F.R.D. 719 (W.D.La.1949),

1. The Production Request was filed and served on September 23rd. The defendants were entitled to an additional 3 days under Rule 6(e), and the 33 days expired on October 26th. Under Rule 5(b), the defendants' response was deemed served on November 1st.

aff'd by equally divided Court, 339 U.S. 940, 70 S.Ct. 793, 94 L.Ed. 1356 (1950) (dismissal based on Government's refusal to produce documents based on claim of privilege); *United States v. National Broadcasting Co.,* 65 F.R.D. 415 (C.D.Cal.1974) appeal dismissed, 421 U.S. 940, 95 S.Ct. 1668, 44 L.Ed.2d 97 (1975) (dismissal where "the government has voluntarily chosen not to comply with the Court's orders"); *Black v. Sheraton Corp.,* 371 F.Supp. 97 (D.D.C.1974) (facts taken as established against the United States based on refusal to produce documents).

▮▮▮ The defendants argue that because they expressed a willingness to produce the documents called for by Paragraph 5 of the Production Request at the November 22nd hearing (disregarding for the moment the defendants' post-hearing request for the imposition of conditions on production), the sanction of dismissal should not be applied. The Court has given careful consideration to this point and has concluded that in the factual circumstances of this case, the defendants' belated offer to comply does not make a lesser sanction appropriate and that the dismissal of the Petition is the appropriate sanction. The Court bases this conclusion on the following facts:

(a) The defendants' eleventh hour offer does not alter the fact that they willfully refused to comply with the Court's Order. At best, it is an effort to escape the consequences of non-compliance by offering to do what they were ordered to do almost a month ago. In similar circumstances, the Courts have not viewed such last-minute changes of position with favor, and neither does this Court. Compare *Kelley v. United States,* 338 F.2d 328 (1st Cir. 1964), in which the plaintiff failed to comply with the Court's Order to answer interrogatories, and the action was dismissed. The plaintiff then offered the answers to the interrogatories and moved for reconsideration of the dismissal. The District Court denied the motion to reconsider, and the Court of Appeals stated as follows in affirming:

> "The sole argument made is that the order was too strict in this case, and that a fine on counsel, or a taxing of costs, would have been enough. We are not in sympathy with this suggestion. In the conduct of his case, acting for what he surely thought would be to the best interests of his client, counsel for libellant (not counsel on this appeal) deliberately disregarded the court's order, and by a calculated maneuver sought to obtain an improper advantage. If this had worked out it would, at least in counsel's opinion, have helped libellant's cause. Now, when it backfired, he wants to take a slap on the wrist and start over. We refrain from further comment." [2]

(b) The Court finds that the defendants deliberately disregarded the Court's Order and that the dismissal of the defendants' Petition is not only appropriate but essential to maintain the integrity of the orders entered by the Court. At the hearing, the defendants argued that the plaintiff was not prejudiced by the refusal to comply since he still holds his position of Deputy Director of the Birmingham Office and that the only prejudice to the plaintiff's attorney was the time he spent in the preparation of the Rule 37 motion and in attending the hearing. However, the refusal of a party to a Federal Court lawsuit to comply with an Order of the Court cuts substantially deeper than the question of prejudice to litigants and their attorneys. A basic tenet of our government of law is that a party is required to obey a Court order. After having refused to comply with the Court's Order, the defendants now ask for a light sanction by agreeing to do what they were ordered to do almost a month ago. An order of a Court is not to be treated so lightly. Compare *Norman v. Young,* 422 F.2d 470 (10th Cir. 1970), in which the Court pointed out in affirming the entry of default judgment for the defendants' failure

---

**2.** See also *Von Brimer v. Whirlpool Corp.,* 362 F.Supp. 1182 (N.D.Cal.1973), in which the Court stated that "this Court finds that the failure of plaintiffs to come forward with this and other documents until literally the eve of trial to have been a willful failure to comply, and accordingly, will exclude Plaintiffs' Exhibit 6."

to produce documents as required by Court Order that:

"[T]he Normans' failure to produce the requested papers was willful. It was more than intentional; it was a direct flaunting of the Court's authority."

Moreover, the public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders. Regrettably, as this case once again demonstrates, Governmental agencies too often set the contrary example of resistance to discovery. Day in and day out, counsel for private litigants routinely exchange documents, frequently without a request for production being filed, while some Governmental agencies seem to take the attitude that their files are for their use only.[3] This Court has previously had occasion to invoke a Rule 37 sanction for the refusal of a Governmental agency to respond to discovery, *United States v. Wright Motor Co.*, supra, and it takes this opportunity to remind Governmental agencies with cases in this Court that the discovery rules and the Court's discovery orders are to be complied with.

(c) The Court is of the opinion that in the circumstances of this case, no lesser sanction would be an effective remedy for the defendants' disregard of the Court's Order.

A resetting of the hearing on the Petition would be more of a penalty to the plaintiff and the Court than it would to the defendants. The plaintiff would be required to renew his preparation for the hearing, including the contacting of witnesses residing outside the State who were released when the hearing was cancelled. Similarly, the Court would be required to find another date on its already overburdened docket. When the defendants filed their Petition on September 20, 1976, they asked the Court to set the hearing at the earliest possible date,

and the Court complied by giving the defendants the very first open date on its docket. In view of this fact, the defendants cannot reasonably suggest that their failure to comply with the Court's Order should result in nothing more than a rescheduling of the hearing.

So also, the sanction of a fine for contempt would accomplish nothing of any substance. It would be paid by the EEOC, and the cost would ultimately fall on the taxpaying public.

In sum, the observations of the Court in *G–K Properties v. Redevelopment Agency of City of San Jose*, 409 F.Supp. 955 (N.D. Cal.1976), express this Court's view of the issue here. In that case, the Court pointed out that the dismissal of the action was the appropriate sanction "to protect the integrity of its orders" and that:

"A continuance of the trial date is simply no sanction at all.—To grant another continuance would in effect be a sanction against the Court because of the disruptive effect on the Court's calendar. Nor would fines be adequate. Plaintiffs have house counsel familiar with litigation who read the plain and unambiguous language of the Court's order of October 28, 1975, calling for obviously relevant material. To disregard that order, for reasons known only to plaintiffs, is a willful act which threatens the integrity of the judicial process. Imposing a fine under these circumstances would introduce into litigation a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that the withholding may not be discovered and, if so, that it would only result in a fine."

(d) Both the Supreme Court and the Fifth Circuit Court of Appeals have recently emphasized the importance of effective Rule 37 sanctions in order to deter others from similar conduct. In *National Hockey*

---

**3.** Compare *EEOC v. Los Alamos Constructors*, 382 F.Supp. 1373 (D.N.M.1974), in which the Court commented that:

"Those unfortunate enough to be forced into litigation with the government still face agen-

cy insistence on trial by ambush, although, as we will see presently, Congress and the courts agree that a recognition of governmental privilege is the rare exception, while full disclosure is the almost universal rule."

*League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), the Supreme Court agreed with the District Court's sanction of dismissal for failure to comply with an order to answer interrogatories and stated as follows in so holding:

"[T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts."

So also in *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379 (5th Cir. 1976), our Court of Appeals pointed out:

"Although we could infer that, following imposition of a more lenient sanction, the chastened appellant might have complied with the district court's orders, the Supreme Court has emphasized the deterrent aspect of Rule 37(b)(2) sanctions."

This consideration has a particularly compelling application in the circumstances of this case. The Equal Employment Opportunity Commission has been given the authority by Congress to institute lawsuits under Title VII of the Civil Rights Act in carrying out its important task of promoting equality in employment, and the Courts are directed by the statute to expedite the processing of Title VII cases. It is apparent that if the EEOC were to be given only a slap on the wrist in this case, such action might well encourage defendants sued by the EEOC to delay in responding to the EEOC's discovery requests and to argue that the sanction for disregarding discovery rules and Court orders should be no more than that here given to the EEOC. The net result would be delays in the processing of Title VII cases and a proliferation of discovery disputes on the Court dockets.

This case is but a grain of sand in comparison to the ever-increasing volume of Title VII cases and the high degree of importance inherent in effectuating the goal of equal employment opportunities. To create the potential that this case might result in evasiveness and delays by defendants in responding to discovery in suits filed by the EEOC would most assuredly be an error of substantial magnitude. The sanction of dismissing the Petition is eminently appropriate "to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League v. Metropolitan Hockey Club*, supra.

(e) While the defendants represented to the Court at the hearing that the documents would be produced "if ordered by the Court", this representation was soon modified by the defendants' post-hearing letter asking the Court to attach conditions to the production of the documents.

The defendants' post-hearing letter is revealing of their cavalier attitude toward the discovery rules and this Court's Order. It contains the statement that the requested conditions should be imposed "Should the Court decide to grant Plaintiff's Request for Production". At this late hour, the defendants speak in terms of the result if the Court grants the plaintiff's Request for Production, when the facts are that Rule 34 was amended in 1970 to eliminate the procedure of a motion and order to produce,[4] that it was the obligation of the defendants to file timely objections to the Request for Production if they did not intend to comply with it, and that the Court ordered the production of the documents almost a month ago.

Moreover, the conditions which the defendants would have the Court attach to the production of the documents would have been inappropriate even if they had

---

4. 8 Wright and Miller, *Federal Practice & Procedure* § 2207 (1970).

been advanced in a timely fashion. The conditions "Disclosure limited to Counsel for Plaintiff Bertram Perry" and "No reproduction of the 'Audits' without the specific authorization of the Court or Counsel for the EEOC" could be interpreted as prohibiting the use of the documents as evidence, which would remove a principal value of documentary discovery. Similarly, the condition "Counsel should be prohibited from discussing the contents of the 'Audits' with Plaintiff or anyone else" would have the manifestly unreasonable result of prohibiting the plaintiff's attorney from discussing the contents of the documents with his own client in preparation for trial. The fact that the defendants advanced these requested conditions long after the expiration of the period for the filing of objections and after they had represented to the Court at the hearing that the documents would be produced is further evidence of the defendants' intransigent conduct in responding to discovery and in complying with the Court's Order. Compare *Sperandeo v. Milk Drivers & Dairy Employees Local Union No. 537*, 334 F.2d 381 (4th Cir. 1964), in which the plaintiff agreed to produce the documents in camera on the condition that he could reserve the right to dismiss if the Court ruled the documents could be produced in open court. In affirming the dismissal of the action, the Court stated that:

> "At the outset, we deem the appellant's conditional offer to abide the court's order for an in camera examination of the documents as tantamount to a refusal to comply with that order and it will be so considered. Such an order cannot be conditionally accepted by a governmental agency, or the head thereof, any more than it could be so accepted by any private litigant."

(f) The sanction of dismissing the Petition is mild by comparison with the sanctions which are set forth in Rule 37(b) and which have been applied by the courts. It entails neither the dismissal of an action, nor the entry of default judgment, nor taking allegations as established facts. All that it means is that the defendants will not be allowed to initiate the proposed adverse action set forth in the Petition. This sanction is clearly no more severe than that called for by the facts of this case.

(g) The defendants' refusal to comply with respect to Paragraph 5 of the Request for Production is compounded by the fact that the defendants produced only part of the documents requested by Paragraph 2 of the Production Request and did not produce any of the documents requested by Paragraphs 3 and 4.[5]

Accordingly, based on all these facts, the Court finds that the dismissal of the defendants' "Petition for Permission to Process Adverse Action Against Bertram Perry" is the appropriate sanction for the defendants' failure to comply with the Court's Order.

## 4. Effect of Rule 55 :

■ Although it was not raised by the defendants, the Court has considered whether the application of this sanction might be prohibited by the provision of Rule 55 that a default judgment may not be entered against the United States unless the claimant establishes his right to relief by evidence satisfactory to the Court. The Court concludes that Rule 55 does not preclude the sanction of dismissing or striking the Petition. This sanction will not result in any default judgment but only in the dismissal or striking of the Petition for Permission to Process Adverse Action. Moreover, the defendants assumed the position of a moving party in filing the Petition, and the United States is subject to the sanction of dismissal under Rule 37(b). 4A *Moore's Federal Practice* ¶ 37.03, page 37–70 (2nd ed. 1975).

---

5. The defendants' failure to produce these documents could have led to the imposition of sanctions in accordance with Rule 37(d).

## II.

### EXTENT TO WHICH AN ACTUAL CONTROVERSY REMAINS

The Court has carefully reviewed the voluminous file in this case and has concluded in doing so that despite all the sound and fury which it has generated, there is no longer any existing actual controversy at the present time.

This lawsuit was originally initiated as a result of the efforts of the defendants to remove the plaintiff from his position as Deputy Director of the Birmingham District Office by means of a "detail". Since then, however, the detail has been withdrawn. Similarly, since there is no presently existing effort to remove the plaintiff, the allegations of the amended complaint no longer present a viable actual controversy.

The Court recognizes the desire of defendant Falkowski to use this lawsuit as the vehicle for seeking to vindicate her actions which were the subject of the plaintiff's protests, which in turn led to the effort to remove him from the Birmingham office. The crux of the matter is that she was present and represented by able and experienced counsel at the preliminary injunction hearing on August 29, 1975 and on advice of counsel elected not to testify. Having had second thoughts, she now seeks to give the testimony that she elected not to give more than a year ago. The Court fully understands the considerations which motivate her desire to turn back the clock and provide this testimony, but it is abundantly clear that the Courts cannot try cases and render decisions to satisfy the personal desires of anyone when there is no longer any existing actual controversy.

While the Court finds that there is no longer an actual existing controversy in this case, the Court also finds that it is necessary to retain jurisdiction to protect the plaintiff against a recurrence of allegedly retaliatory actions. The records before the Court demonstrate that there are reasonable grounds to apprehend a resumption of acts of alleged retaliation. This being so, the Court will in the exercise of its discretion retain jurisdiction of this case for the purpose of resolving any claims or issues regarding a recurrence of allegedly retaliatory actions against the plaintiff. E. g., *Atlantic Richfield Co. v. Oil, Chemical & Atomic Workers International Union*, 447 F.2d 945 (7th Cir. 1971), in which Judge Stevens pointed out that "If past wrongs have been proved, and the possibility of future misconduct survives, so does the court's power."

### C. CONCLUSION:

For the reasons set forth above, it is by the Court ORDERED, ADJUDGED, and DECREED as follows:

1. The defendants' "Petition for Permission to Process Adverse Action Against Bertram Perry" be and the same is hereby dismissed and stricken under Rule 37(b) of the Federal Rules of Civil Procedure.

2. The Preliminary Injunction entered on September 11, 1975 be and the same is hereby dissolved.

3. The Court retains jurisdiction of this cause for the purpose of hearing and resolving any claims or issues arising out of any recurrence of allegedly retaliatory actions against the plaintiff subsequent to the entry of this Order.

4. In order to ensure the protection of the plaintiff against any recurrence of the alleged acts of retaliation or discrimination arising from the subject matter of this case, it is hereby ORDERED that in the event the Equal Employment Opportunity Commission or any officer or agent thereof should propose to remove the plaintiff from his position of Deputy Director of the Birmingham District Office or from the Birmingham District Office by any means, including but not limited to a detail or adverse action, based on any act, occurrence, or situation arising hereinafter, such proposal shall not be initiated, proposed, or implemented unless and until a petition describing such proposal has been filed with this Court and approved after hearing by the Court.

5. The question of costs is reserved for future determination by the Court.