In the Matter of The Complaint of the UNITED STATES of America, as owner of the United States Naval Ship PVT. JOSEPH F. MERRELL, for exoneration from or limitation of liability, Plaintiff-Appellant,

v.

SUMITOMO MARINE & FIRE INSUR-ANCE COMPANY, LTD., etc. et al., Defendants-Appellees.

In the Matter of The Complaint of the UNITED STATES of America, as owner of the United States Naval Ship PVT. JOSEPH F. MERRELL, for exoneration from or limitation of liability,

UNITED STATES of America, Plaintiff-Appellant,

v.

UNITED STATES NAVAL SHIP PVT. JOSEPH F. MERRELL and The Vessel "Pearl Venture", Defendants-Appellees.

UNITED STATES of America, Counter/Claimant-Appellant,

v.

The M/V PEARL VENTURE, her engines, tackle, etc., in rem

and

Pearl Carriers, Inc., Defendants/Counter-claim Appellees.

SUMITOMO MARINE & FIRE INSUR-ANCE CO., LTD., a Corp. et al., Plaintiffs-Appellees,

v.

PEARL CARRIERS, INC. et al., Defendants-Appellants.

and

The Vessel Pearl Venture, Defendant.

UNITED STATES of America, Plaintiff-Appellant,

v.

SUMITOMO MARINE & FIRE INSUR-ANCE COMPANY, Claimant-Appellee.

Nos. 76–2258, 77–1902, 77–1903, 78–1824 and 78–2388.

United States Court of Appeals, Ninth Circuit.

April 16, 1980.

Robert S. Greenspan, U. S. Dept. of Justice, Washington, D. C., Charles W. Cappel, (argued), Los Angeles, Cal., Robert E. Kopp, Los Angeles, Cal., on brief for plaintiff-appellant.

Charles W. Cappel, Los Angeles, Cal., Robert S. Greenspan, Washington, D. C., (argued), Dan Brennan, Anita E. Rudd, Los Angeles, Cal., on brief for defendants-appellees.

Before WALLACE and KENNEDY, Circuit Judges, and CRAIG,* District Judge.

WALLACE, Circuit Judge:

The government appeals from the district court's orders imposing sanctions against the government, and personally against the government's attorney, for failure to obey discovery orders. Because we find that the sanctions were within the discretion of the district court, *see* Fed.R.Civ.P. 37(b), we affirm.

I

This litigation arose from a December 29, 1973 collision at sea involving the USNS PVT. JOSEPH F. MERRELL, a government vessel, and the M/V PEARL VENTURE, owned by Pearl Carriers, Inc. (Pearl). In July 1974, the government sued Pearl for $1.7 million in damages for the loss of its ship, damage to cargo, salvage, towing, and repair costs, and the expenses incurred in cleaning up the oil spill that resulted from the collision. Pearl counterclaimed for approximately $800,000 in dam-

---

* Honorable Walter E. Craig, United States District Judge, District of Arizona, sitting by designation.

ages. The various insurers of cargo carried aboard the M/V PEARL VENTURE (cargo interests) also filed claims against the government.

Informal discovery began in December 1974. The district court scheduled a pre-trial conference for May 19, 1975. On May 1, counsel for the cargo interests served the government with interrogatories. The government responded on May 14 by seeking postponement of the pre-trial conference to allow more time for discovery. In an accompanying affidavit, government counsel declared that although the documentation needed to establish the government's damages was "for the most part" assembled, his office had not yet received it, and that it would probably take several weeks before the government's damages could be "stated with reasonable certainty." The district court granted the continuance, which was unopposed. On July 14, 1975, Pearl initiated its own discovery against the government by filing interrogatories.

On November 11, 1975, after waiting four months to receive answers to its interrogatories, Pearl filed a motion seeking either sanctions or an order compelling answers. The district court heard this motion, together with a similar motion brought by the cargo interests, on December 1, 1975. The court ruled, after recounting the government's six-month series of delays and broken promises in regard to answering the cargo interests' interrogatories, that unless the cargo interests' interrogatories were answered by December 12, 1975, and Pearl's interrogatories by January 30, 1976, the government's complaint would be dismissed.

Despite the district court's warning of a possible dismissal, the government did not file interrogatory answers on January 30, but instead filed a motion seeking an extension to answer until February 9, 1976. Strangely, the government noticed this motion for February 23, which was 14 days after the date to which the government requested the extension. By telephone on February 13, 1976, the government's counsel advised counsel for Pearl that the interrogatory answers would be served prior to the February 23 hearing. Pearl then filed papers indicating that it did not oppose the requested time extension.

The district court did not hear the government's extension motion until March 1, 1976. On that date, just prior to the scheduled hearing, the government's counsel served copies of the required interrogatory answers upon Pearl. Nevertheless, the court went ahead with the hearing. It found that the government's counsel had "demonstrated a callous disregard for the discovery processes and the orders of this Court." As a result, the district court imposed a $500 sanction, payable to Pearl, against the government's counsel personally, stating: "I want to have a clear and emphatic message to you and your office that I'm not going to tolerate any further such conduct by you or by any members of your office in terms of this litigation."

The government thereafter filed a motion to reconsider the imposition of sanctions. At the March 9, 1976 hearing on this motion, the district court stated:

> Well, I have made a finding . . . that there was a willful and callous disregard of court orders and discovery procedures on the part of [government counsel], and that it was a continuing course of conduct. The Court had had to hear two separate hearings on this same matter, and it just seemed so flagrant to the Court—this is the first time I've ever had to do this with any representative of the Government, and I don't relish it, but it seemed to me to be such a flagrant disregard for orders of the Court and such a flagrant disregard for the rights of opposing counsel and the duties of a court in general, that the imposition of these sanctions was necessary.

The court added that if the government counsel's problem was insufficient staffing, then perhaps the imposition of sanctions would generate some help from the Justice Department. The court denied the motion for reconsideration.

Although the government answered the interrogatories on March 1, 1976, it did not provide the damages evidence which it had promised in its May 14, 1975 affidavit in support of the motion to continue the pre-trial conference. After a status conference held on June 21, 1976, the district court ordered that "[a]ll discovery shall be completed on or before August 10, 1976." This order clearly required the government to produce the requested evidence of its damages. The court also ordered that any party electing to move for an order directing bifurcation of trial of the liability and damages issues "shall file a suitable motion by July 2, 1976 . . . ."

August 10, 1976 came and went, and the government still had not provided evidence of its damages. The district court held another status conference on October 19, 1976. As a result of this hearing the court issued an order which stated, in part:

> On or before Thursday, November 25, 1976, counsel for the United States of America shall provide to all other parties herein a complete statement of the damages which it claims in the within action, together with copies of all the documents which support such claimed damages.

> .    .    .    .    .

> Trial of this action shall commence before this Court at 9:30 a.m. on the morning of Tuesday, January 25, 1977.

On November 29, 1976, four days after this deadline expired, the government sent a letter to Pearl setting forth the government's "estimate" of damages. The letter stated:

> Insofar as we are able at this time, we are herewith submitting to you our current statement of damages in the above matter. . . . [O]ur current figures are not yet finalized, and still remain subject to revision. As matters presently stand, however, our damages are tentatively stated as follows .    .    ..

> .    .    .    .    .

> As you will have observed, the precise amount of our claim for the damages

which we have sustained by reason of this collision is still subject to revision ar l refinement, and almost certainly cann.t be reflected in a precise final figure for several more months.

The letter set forth approximately $1.7 million in damages, broken down into several categories. Although the government asserts that only a small percentage of the damages claimed in the letter was still subject to revision, it concedes that the damage figures set forth in this letter were subject to either upward or downward revision.

Upon receiving the government's letter, counsel for Pearl immediately notified government counsel that Pearl objected to the government's submission of a mere "estimate." Several days later Pearl's counsel received a carton containing computer printouts which had been referred to in the November 29 letter. These contained a partial listing of values for some of the allegedly damaged cargo as well as a partial listing of some of the government's expenses incurred in the salvage and pollution cleanup operations. The government did not supply underlying documents to support its cargo valuation lists or its salvage and pollution claims.

On December 16, 1976, Pearl filed a motion for sanctions against the government. On December 20, the district court ordered the government to respond to this motion on or before December 28, 1976. The government did not meet this filing deadline.

The court heard the sanction motion on January 10, 1977. This was only two weeks prior to the scheduled commencement of trial. The court found that the government had willfully disregarded its October order requiring the government to produce evidence of its damage by November 25, 1976, "and that the orderly and expeditious administration of justice requires sanctions in this matter." Accordingly, the district court ordered that the government would be precluded from introducing any evidence of its damages.

## II

### A. *The Preclusion Order*

■ Rule 37(b) of the Federal Rules of Civil Procedure provides a wide range of sanctions for a party's failure to comply with court discovery orders. In ascending order of harshness, the district court may: require the delinquent party or his attorney to pay the reasonable expenses, including attorney's fees, incurred by the innocent party as a result of the failure to obey the order; strike out portions of pleadings; deem certain facts as established for purposes of the action or preclude admission of evidence on designated matters; dismiss all or part of the action; or render a default judgment against the disobedient party. See *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979). The choice among the various sanctions rests within the discretion of the district court. Fed.R.Civ.P. 37(b)(2). We therefore review the district court's order to determine whether the sanctions imposed constituted an abuse of discretion. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976) (per curiam); *Anderson v. Air West, Inc.*, 542 F.2d 1090, 1092 (9th Cir. 1976). This discretion will not be disturbed unless we have " 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.' " *Anderson v. Air West, Inc.*, 542 F.2d supra at 524 (quoting *In re Josephson*, 218 F.2d 174, 182 (1st Cir. 1954)).

The Court of Appeals for the Second Circuit has recently identified three general purposes served by Rule 37(b) sanctions:

Preclusionary orders ensure that a party will not be able to profit from its own failure to comply. *Dellums v. Powell*, 184 U.S.App.D.C. 339, 566 F.2d 231 (1977). Rule 37 strictures are also specific deterrents and, like civil contempt, they seek to secure compliance with the particular order at hand. *Robison v. Transamerica Ins. Co.*, 368 F.2d 37 (10th Cir. 1966). Finally, although the most drastic sanctions may not be imposed as "mere penalties," *Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909); see *Hovey v. Elliott*, 167 U.S. 409, 17 S.Ct. 841, 42 L.Ed. 215 (1897), courts are free to consider the general deterrent effect their orders may have on the instant case and on other litigation, provided that the party on whom they are imposed is, in some sense, at fault. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam); *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958).

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, supra, 602 F.2d at 1066.

■ A district court's use of sanctions in order to achieve these objectives is tempered by the requirements of due process. For example, "when it has been established that failure to comply [with court discovery orders] has been due to inability, and not to willfulness, bad faith, or any fault of [the disobedient party]," the harshest sanction of dismissal is improper. *Societe Internationale Pour Participations Industrielles et Commerciales v. Rogers*, 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958). Thus, neither dismissal nor preclusion of evidence that is tantamount to dismissal may be imposed when the failure to comply with discovery orders is due to circumstances beyond the disobedient party's control. *G–K Properties v. Redevelopment Agency*, 577 F.2d 645, 648 (9th Cir. 1978); *Anderson v. Air West, Inc.*, supra, 542 F.2d at 1093. See *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, supra, 602 F.2d at 1066; Note, *The Emerging Deterrence Orientation in the Imposition of Discovery Sanctions*, 91 Harv.L.Rev. 1033, 1050 (1978).

■ In the case before us the district judge imposed the preclusion sanction on the government only after 18 months of delays and failures to comply with court-ordered discovery. The court considered that the government counsel's failure to provide timely answers to interrogatories or to provide at any point prior to trial a final tabulation of the government's damages, may have been more the result of serious understaffing than of bad faith. Yet the prejudice to Pearl and the cargo interests was unmistakable: two weeks before trial, the government had yet to supply firm damage figures. A series of warnings from the district court, including the assessment of $500 in sanctions against the government counsel in March 1976, failed to convince the government that discovery orders were to be strictly followed in this case. Thus, only by severe sanctions could the court further the first two purposes of Rule 37(b).

Severe sanctions were also necessary to further the third objective of Rule 37(b): generally deterring flagrant disobedience and callous disregard of court discovery orders. *National Hockey League v. Metropolitan Hockey Club, Inc., supra,* 427 U.S. at 643, 96 S.Ct. at 2781. The effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government. "[T]he public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders." *Perry v. Golub,* 74 F.R.D. 360, 366 (N.D.Ala. 1976). As the district judge pointed out, if the cause of the government's failures to comply with court orders is understaffing, then perhaps harsh measures will encourage those charged with funding and allocating personnel among the Justice Department's various offices to take ameliorating action.

The government's belated compliance with the orders requiring the government to answer interrogatories, and its efforts to provide some, though not all of the requested damage figures, are entitled to little weight in analyzing whether the sanctions imposed were proper. If harsh measures were not taken in such cases, the government and "other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel to flout other discovery orders of other district courts." *National Hockey League v. Metropolitan Hockey Club, Inc., supra,* 427 U.S. at 643, 96 S.Ct. at 2781; *see Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., supra,* 602 F.2d at 1068; *G–K Properties v. Redevelopment Agency, supra,* 577 F.2d at 648.

■ The government argues that Fed.R. Civ.P. 55(e), which prohibits the entering of default judgments against the United States "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court," bars the issuance of a preclusion order against the government. The weight of authority, however, is that Rule 55(e) applies only to default judgments, and not to Rule 37(b) sanctions. *See In re Attorney General of the United States,* 596 F.2d 58, 66 n.15 (2d Cir. 1979); *Reynolds v. United States,* 192 F.2d 987, 998 (3rd Cir. 1951), *rev'd on other grounds,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Perry v. Golub, supra,* 74 F.R.D. at 368; 10 Wright & Miller, Federal Practice and Procedure: Civil § 2702, at 358–60 (1973). *Cf. Campbell v. Eastland,* 307 F.2d 478, 492 (5th Cir. 1962), *cert. denied,* 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963) (Rule 55(b) prohibits relieving plaintiff of burden to prove claim against the government where disobeyed discovery order went to collateral matter). Although it is unfortunate that the taxpayers must bear the burden of the government's failure to make adequate and timely discovery, Rule 55(e) does not immunize the government against any of the sanctions—except default judgments— available pursuant to Rule 37(b). Rule 55(e) thus offers no protection from the preclusion order issued in this case.

## B. *The $500 Sanction*

■ The $500 sanction imposed personally on the government counsel occurred ap-

proximately ten months prior to the entrance of the preclusion order. This sanction was apparently intended primarily as a warning to government counsel and as an indication that further disregard of court orders would not be tolerated. Rule 37(b) specifically provides that such sanctions shall be assessed against the attorney for the disobedient party. In this case, because Rule 37(f) prevents the assessment against the United States of fees and expenses not authorized by statute, the district court's only available target for such sanctions was the government's counsel.

The government argues that the district judge did not have before him a showing of the attorney's fees and expenses actually incurred by Pearl's counsel. In view of the district judge's familiarity with the government's endless series of delays in this case, however, we cannot say that $500 was an unreasonable estimation of fees. Moreover, the $500 sanction was meant not only to compensate Pearl, but also to deter government counsel from further disobedience of court orders. On these facts no showing of actual fees and expenses was required. We conclude that the $500 sanction was a measured response to the flagrant disobedience of court orders by government counsel, which nonetheless continued unabated for an additional ten months until the final preclusion order.

### III

Because we conclude that the district court's use and choice of sanctions in this case were within the bounds of the discretion afforded to the district court by Rule 37(b), we affirm.

AFFIRMED.