**POTLATCH CORPORATION,**
**Plaintiff-Appellee,**

v.

**UNITED STATES of America,**
**Defendant-Appellant.**

**No. 81–4201.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 8, 1982.

Decided June 8, 1982.

Gilbert S. Rothenberg, Washington, D. C., argued, for defendant-appellant; John F. Murray, Richard Farber, Washington, D. C., on brief.

Don Paul Badgley, Bogle & Gates, Seattle, Wash., for plaintiff-appellee.

Before  HAYNSWORTH *,  MERRILL and WALLACE, Circuit Judges.

MERRILL, Circuit Judge:

The Government failed by seven weeks to comply with a discovery deadline set by the district court for the exchange of appraisal reports by expert witnesses. As a sanction for this failure, imposed pursuant to Rule 37(b)(2)(B) of the Federal Rules of Civil Procedure [1], the Government was denied the right to call those experts as trial witnesses or to offer their reports in evidence. Following trial, judgment was rendered against the Government. On this appeal from judgment the question we face is whether imposition of the sanction under the circumstances here presented constituted an abuse of discretion. We have concluded that it did.

This action was brought by Potlatch Corporation (Taxpayer) to secure a refund of taxes. Taxpayer engages in the manufacture of forest products. In its tax returns for the years 1971 and 1972 it elected to use the provisions of 26 U.S.C. § 631(a), which section allows computation of gain from sale of timber on the basis of the fair market value of the timber sold as of the first day of the taxable year. The Commissioner disagreed with the valuation placed by Taxpayer upon its timber, and on the basis of his own valuation determined that there was a tax deficiency for those years (including an interest assessment) in the sum of over $6,000,000. After paying the additional taxes and interest, Taxpayer brought this suit for refund on August 1, 1979. The Government was served on August 8, 1979. From that date the chronology of events is of relevance.

On August 10, 1979 the United States Attorney for the Northern District of California requested the Internal Revenue Service administrative files on this matter and sought the defense recommendations of the Department of Justice.

On October 4, 1979 the Government's answer was filed.

On October 29, 1979, at a status conference before Judge Renfrew of the Northern District of California, Taxpayer requested firm dates for discovery and for the exchange of appraisal reports. The Government objected, stating that it was still studying the administrative files and that it had not yet had sufficient time to employ independent experts to appraise the timber. Judge Renfrew postponed the establishment of specific dates but urged the Government to make its selection of experts as soon as possible.

On December 5, 1979, at a second status conference before Judge Renfrew, the Government's attorney advised that the experts whom he had interviewed believed that they would require at least six months from the date of their employment to make their examinations and prepare their reports. He also advised that he expected to make his final selection of experts and receive Justice Department authorization for their employment in the near future. The court ordered that the exchange of appraisal reports take place by June 2, 1980; it also fixed August 29, 1980 as the last day for discovery and set trial for October 6, 1980.

On December 14, 1979 and January 8, 1980 the United States Attorney advised the Department of Justice of the two experts whom he desired to employ and requested authorization to hire them on the terms he had arranged.

---

* Honorable Clement F. Haynsworth, Jr., Senior United States Circuit Judge for the Fourth Circuit, sitting by designation.

1. Rule 37(b)(2) provides:
    If a party * * * fails to obey an order to provide or permit discovery * * * the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

    \* \* \* \* \* \*

    (B) An order * * * prohibiting [the disobedient party] from introducing designated matters in evidence.

On January 14 and January 29, 1980 authority to hire was granted. Expert witness agreements were formally executed on January 31 and February 3, 1980, and the experts commenced their work during the first week of February 1980.

On March 4, 1980 the case was reassigned to Judge Weigel of the Northern District of California.

On April 30, 1980 one of the Government experts advised the Government that he could not complete his report before July 30, 1980. The United States Attorney then informed Taxpayer that the Government would be unable to meet the deadline for exchanging reports.

On May 2, 1980 Taxpayer filed a motion to compel the exchange as had been ordered on December 5, 1979, and to exclude the testimony and reports of experts whose reports were not produced by June 2, 1980.

On May 9, 1980 Taxpayer's motion was heard by a magistrate who granted it without reaching the merits, explaining that Judge Weigel had issued a standing order barring magistrates from amending court orders respecting discovery or the fixing of trial dates. On the same day the Government moved the district court to vacate the magistrate's order.

On June 6, 1980 the Government's motion to vacate was heard by Judge Weigel. On June 9, 1980 it was denied.

On June 17, 1980 the Government moved for reconsideration. At the hearing on this motion on July 24, 1980 the Government attorney reported that he had received the reports of the Government experts and had sent them to Taxpayer's counsel. At this hearing, then, the Judge was aware that he was faced not with a refusal to comply with a court order, but rather with tardy compliance. He nonetheless announced from the bench that the motion would be denied. On August 3, 1980 it was denied by written

order and the sanction as prayed was imposed for failure to meet the deadline. The court's order did, however, provide the following alternative:

> Because of the Government's strong desire to utilize the reports prepared by its additional experts * * * the Court is willing to allow the Government to use these experts at trial if Potlatch is adequately compensated for the prejudice it will inure because of the late submittal of these reports. Accordingly, the Court will allow the Government to use Mr. Caddis and Mr. Williams at trial if it pays $10,000 (Ten Thousand Dollars) to Potlatch for the prejudice that will be suffered by Potlatch.

The Government explains that it was unable to avail itself of this alternative since it was without statutory authority voluntarily to make such a payment. Taxpayer does not dispute this.[2]

In his written order, the judge set forth his reasons for imposing the sanction as prayed. We find his determinations inconsistent with the record in several respects.

First, the judge concluded that "it is apparent from the record that the Government never intended to comply with Judge Renfrew's order." This conclusion followed from his finding that the Government knew from the outset that its experts would be unable to meet the June 2 deadline yet never so informed the court or sought an extension of time.

In this regard, we note that the Government attorney advised the court at the December 5, 1979 status conference that he had not yet hired his experts and that those whom he had interviewed estimated that they would require six months to complete their appraisals and prepare their reports. The court having imposed the June 2, 1980 deadline with that knowledge, one might well have understood it as having said,

---

2. The Government also argues that the court's order of the alternative was in violation of Rule 37(f), F.R.Civ.P. That rule provides that "[e]xcept to the extent permitted by statute, expenses and fees may not be awarded against the United States under this rule." Taxpayer responds that the alternative did not order the Government to pay anything. Rather it offered the Government a means of escape from the preclusion order which it could accept at its option. We need not reach this issue.

"Well, go ahead and try anyway." Apparently the Government is now being criticized and charged with some form of deception for having read the court's order in that light and having attempted compliance rather than having immediately thrown in its hand.

In fact it was not until April 30, 1980 that the Government was certain that its experts could not meet the deadline, and it promptly so notified Taxpayer. Moreover, it was not necessary for the Government attorney at that point to move to extend the deadline since his opposition to Taxpayer's motion to enforce the December 5 order served the same purpose. In light of these facts, we cannot agree that the Government's attempted compliance with the June 2 deadline somehow constitutes evidence of an intent on its part never to comply with Judge Renfrew's order.

Second, the judge concluded that the factors leading to the Government's failure to meet the discovery deadline, and in particular its delay in hiring its experts, were due to circumstances within its control. We must disagree.

As to the Government's delay in hiring its experts, we are faced with the interrelationship between the IRS and the Department of Justice, and the need for the United States Attorney in San Francisco to deal with the Department in Washington. We note the need for the Government attorney to secure the administrative file on this matter from the IRS, to study it, and to secure the defense recommendations of the Department before he could file the Government's answer; his need to find and interview appraisers able and willing to act and report within what was sure to be a limited period of time; his need to make a choice of appraisers and negotiate a fee likely to prove acceptable in Washington before authority to hire could be sought; and the need for the FBI to check the experts selected before authority to hire could be granted. In short, we note the facts of bureaucratic delay and red tape, which, while certainly not to be encouraged, cannot be ignored.

Once the experts had been hired, the completion date of their reports was beyond the control of the Government. And in fact the experts did well. They both submitted their reports within the six months from hiring that had on December 5, 1979 been predicted as the minimum time required to complete an appraisal. As we have noted, the court was advised at the July 24, 1980 hearing that the Government reports had already been sent to Taxpayer.

Further, it is not fair to cast the whole of the blame for any delay in submitting the reports on the Government. Taxpayer was not without its share. On February 11, 1980 the Government served a set of interrogatories on Taxpayer seeking information as to the location of the lumber in question. Taxpayer refused to answer on the dubious grounds of irrelevancy. Finally on April 22, 1980 the answers were provided—not seven weeks late, but two and one-half months after demand. What effect this may have had on the Government's experts we do not know. But it does appear that Taxpayer was not then greatly concerned with any prejudice it might suffer by a late exchange of reports.

In light of these facts, we cannot agree that the Government's delay in turning over its reports was due to circumstances within its control. Indeed, we note that even the court, despite its apparent lack of sympathy with the Government's position, appears to have assumed that the Government's performance was not dilatory and that any delay on its part could be justified. By the $10,000 payment alternative it offered the Government, the court expressed its willingness to allow the reports and testimony into evidence if only the prejudice which the delay would cause to Taxpayer were eliminated or alleviated.

In his order the judge expressed the view that the Government would not be prejudiced by its inability to call its experts or offer their reports in evidence since it could rely on the IRS expert on the basis of whose appraisal the Commissioner had determined a deficiency.

In this conclusion, the judge was in error. It was the appraisal of the IRS expert that was called in question by Taxpayer's suit. As the court was aware, the Government attorney sought to reinforce that appraisal and strengthen the Government's case by presenting to the court expert appraisals wholly independent of the IRS and its data. His inability to introduce any such independent, corroborative evidence was highly prejudicial. Indeed this weakness in the Government's case was seized upon by counsel for Taxpayer at trial. He argued to the court that the appraisals of Taxpayer's three experts fell within a narrow range and therefore carried special credibility. He then argued that in contrast, the appraisal of the sole IRS expert was entitled to little weight since it fell well outside that range: "a figure that's out of the ballpark."

We also find that the judge overestimated the prejudice Taxpayer would suffer were the Government's experts permitted to testify. Counsel for Taxpayer called attention to that prejudice at the July 24 hearing. He noted first that the time left to complete discovery by deposing the experts (five weeks) and otherwise to prepare for trial (ten weeks) would be short. Second, he asserted that there would be a lack of mutuality, *i.e.*, that the exchange of expert reports could not take place simultaneously as had been contemplated by Judge Renfrew in his order of December 5. On examination, this showing of prejudice provides little support for the court's order.

As to the time constraints facing Taxpayer, there is nothing in the record to suggest why five weeks to depose the Government experts and ten weeks otherwise to prepare for trial would not have been adequate. Taxpayer's counsel, it must be remembered, had lived with this case for months—far longer than had the Government attorney who was faced with the same constraints. Moreover, the court gave every indication of willingness to allow further time should it be needed.

The asserted lack of mutuality is no more convincing. As the court was advised at the July 24 hearing, the Government did not disclose the contents of Taxpayer's appraisals to its own experts since it was anxious to preserve the independence of their work. The Government, then, had no time advantage over Taxpayer.

Further, any lack of mutuality had been voluntarily created by Taxpayer when it turned its reports over to the Government knowing that the Government was unable to reciprocate. Had it wished, Taxpayer likely could have preserved the mutuality it now regards as essential simply by having moved the court to rescind the order requiring that it produce its reports.

To the extent that lack of mutuality was a problem, we note that the court's order strictly enforcing the deadline seems to have done more to aggravate than to solve it. At the time of the order Taxpayer had had the report of the IRS appraiser, the Government's only witness, for three years while the Government had had Taxpayer's reports for less than seven weeks.

Finally, we note that the court, by the alternative it offered the Government, viewed the possible prejudice to Taxpayer as sufficiently small to be compensated by $10,000. In the context of a case involving millions of dollars, we regard the court's own estimate of prejudice as rather insubstantial.

■ The imposition of sanctions under Rule 37(b) is left to the sound discretion of the trial judge. *David v. Hooker, Ltd.*, 560 F.2d 412, 418 (9th Cir. 1977). The question before us then, is whether, under all of these circumstances, the judge abused his discretion in denying the Government the right to call its experts as trial witnesses or to offer their reports in evidence. We will not find such an abuse of discretion "unless we have 'a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.'" *United States v. Sumitomo Marine & Fire Insurance Co.*, 617 F.2d 1365, 1369 (9th Cir. 1980), quoting *Anderson v. Air West, Inc.*, 542 F.2d 522, 524 (9th Cir. 1976). Upon the record before us, we have that definite and firm conviction.

The case must be remanded for a new trial at which the reports and testimony of the Government experts are accepted in evidence.

REVERSED and REMANDED.

WALLACE, Circuit Judge, concurring:

The majority finds an abuse of discretion because of its definite and firm conviction that the district judge committed a clear error of judgment in reaching two conclusions: first, that the government never intended to comply with Judge Renfrew's discovery order and second, that the government's failure to meet the discovery deadline was due to circumstances within its control. I write separately because after reviewing the record I am not convinced that it was a clear error of judgment for the district judge to arrive at either conclusion. I would still reverse the judgment, however, because I believe that the district court's order presenting the government with the choice between preclusion of its experts' reports or paying the taxpayer $10,000 was improper.

The majority finds the district judge's conclusion that the government never intended to comply with the discovery order inconsistent with the record. *Ante* at 155–156. However, the majority fails to mention two important facts on which the district judge based this conclusion. First, the district judge found conspicuously lacking in the government's moving papers any statement of what efforts it made to comply with the June 2, 1980 deadline. Second, the district judge observed that just before one of the government's experts was hired, he informed the government's counsel that it was unlikely that his appraisal would be completed before the fall of 1980. The government's counsel was aware at that time that Judge Renfrew had already set the June 2, 1980 deadline. Despite this knowledge, the government hired this expert and did not request an extension of time for the exchange of reports. Taking these two facts into consideration, I cannot agree that the district judge's conclusion as to the government's intentions was necessarily inconsistent with the record.

With respect to the majority's determination that the government's delay was due to circumstances not within its control, I believe the majority is mistaken. The majority argues that the government's counsel was not responsible for failing to meet the discovery deadline. However, it is the government and not its counsel that is the litigant in this case. Bureaucratic delay may excuse the government's attorney from being charged with dilatory conduct, but it will not excuse his client. As we said in *United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365 (9th Cir. 1980): "The effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government. '[T]he public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with Court orders.'" *Id.* at 1370, *quoting Perry v. Golub*, 74 F.R.D. 360, 366 (N.D.Ala.1976). If the cause of the government's failure to comply with the court's order is bureaucratic delay as the majority suggests, then harsh measures are called for to encourage those in the government responsible for such delay to take ameliorative action. *See id.*

The district judge gave the government the choice between exclusion of its experts' reports and testimony or payment of $10,000 to the taxpayer. Several times during the hearing on the motion to reconsider, the district judge called the $10,000 payment, which he had reduced from an original amount of $50,000, a "sanction." However, in his order, he stated:

It should be noted that the $10,000 payment is not intended to be a sanction imposed under Rule 37, but rather to serve as compensation for the prejudice Potlatch will suffer if the government chooses to utilize these experts at this late date.

Rule 37(b) of the Federal Rules of Civil Procedure authorizes the court to impose monetary sanctions in the form of reasonable expenses, including attorneys' fees,

against a party failing to obey a discovery order and the party's attorney. However, section (f) of that rule states that expenses and attorneys' fees may not be awarded against the United States.[1] Rule 37(f) is necessitated by 28 U.S.C. § 2412, which authorizes the payment of costs "as enumerated in section 1920 ... but not including the fees and expenses of attorneys to the prevailing party in any civil action ...."

Apparently aware that he could not impose a monetary sanction, conditional or otherwise, against the United States, the district judge was careful in his order to refer to the $10,000 as "compensation for the prejudice Potlatch will suffer." However, such recasting of the payment cannot change its true character. As the government points out in its brief, the judge gave no explanation how the admission of the government's evidence would have prejudiced the taxpayer. The record is barren as to the extent of the taxpayer's prejudice and resulting cost, if any. That the district judge set the payment at $50,000, but then reduced the amount to $10,000 in his order without explanation, further supports the conclusion that the $10,000 amount was not an accurate reflection of the costs incurred by the taxpayer. Furthermore, even if some evidence of actual prejudice had been presented, it is doubtful whether any of the costs resulting would have been of the type enumerated in 28 U.S.C. § 1920 [2] which apparently details the only costs for which the United States could be liable. *See* 28 U.S.C. § 2412.

Thus, since Rule 37 does not authorize the imposition of a monetary sanction against the government and such a payment does not appear to come within the authority of section 2412 as a cost of judgment, I am of the opinion that the district judge made a clear error of judgment when he conditioned the introduction of the government's expert testimony on the payment of $10,000 to the taxpayer.

1. Rule 37(f) has been subsequently repealed, Pub.L.No.96–481, § 205(a), 94 Stat. 2330 (1980), and section 2412 was amended to allow for the imposition of costs, fees, and other expenses against the United States. Pub.L.No. 96–481, § 204(a), 94 Stat. 2327 (1980), *codified at* 28 U.S.C. § 2412(b). These subsequent changes do not apply to the present case, however, since they are only applicable to an adjudication which is pending on, or commenced on or after October 1, 1981.

2. Section 1920 lists the following costs which may be taxed:

1. Fees of the clerk and marshal;
2. Fees of the court reporter for the stenographic transcript;
3. Fees and disbursements for printing and witnesses;
4. Fees for exemplification and copies of papers;
5. Docket fees;
6. Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828.

28 U.S.C. § 1920.