409 F.Supp. 955 (1976)
G-K PROPERTIES et al., Plaintiffs,
v.
REDEVELOPMENT AGENCY OF the CITY OF SAN JOSE, a public body, corporate and politic, et al., Defendants.
No. C-74-0721-CBR.
United States District Court, N. D. California.
March 26, 1976.
*956 James M. Berg, Fitzgerald, Johnson, Berg & Edgar, San Francisco, Cal., for plaintiffs.
John H. Tallett, Rogers, Vizzard & Tallett, San Francisco, Cal., for defendants.

MEMORANDUM OF OPINION
RENFREW, District Judge.
On March 4 and 11, 1976, the Court heard defendants' motion for dismissal of the above-entitled action because of plaintiffs' failure to comply with the discovery order of the Court dated October 28, 1975. At the latter hearing the Court announced its decision from the Bench granting this motion. In order to understand the import of plaintiffs' failure to comply with the Court's order and the reasons for the Court's action, it is necessary to set forth the background which led to the within motion.
This case, filed on April 1, 1974, is a proceeding in inverse condemnation arising out of 28 U.S.C. § 1331 for an alleged taking without just compensation in violation of the Fifth and Fourteenth Amendments of the Constitution of the United States. The property involved is the former S & H Kress Store between First and Second Streets in the City of San Jose, allegedly within a redevelopment project of the Redevelopment Agency of the City of San Jose and the City of San Jose. Plaintiffs asserted that defendants unreasonably delayed the program and have unreasonably interfered with the ownership of plaintiffs' property by acquisition, demolition, changes of access, and a failure to reuse the property which has been acquired. The subject property had been closed and plaintiffs claimed they were forced to sell it at a substantially reduced price to mitigate their damages.
Plaintiffs sought just compensation for the losses of use and rental or return on the subject property in an amount to be determined as well as $1,000,000 for the loss in fair market value of the subject property and other costs and attorneys' fees.
At the outset the reasons for the closing of the store in question were put in issue, whether it was because it was an unprofitable store or because of the alleged inverse condemnation or otherwise. The profitability and method of operations of the entire Kress Stores which were operated as a division of plaintiff Genesco were in issue as well.
The first inquiries concerning the financial status and profit and loss condition of Kress were made in interrogatories addressed to plaintiffs dated August 19, 1975. In the answers to those interrogatories dated September 26, 1975, the following answer was received for Interrogatory VI:
"Please attach the written reports, including the annual reports, since 1964, of the Kress Store division made to the Genesco Board of Directors.
"(a) If no report can be attached, please describe where such reports are located.
"A. At the present time, no reports are known to exist.
"(b) If no written report describe how the report is made to the Board of Directors of Genesco over the period of years referred to and by whom.

*957 "A. At the present time, no reports are known to exist."
Thereafter, defendants by motion requested further answers to interrogatories, including Interrogatory VI. At the same time defendants noticed a motion to produce documents. Among other things, item No. 2 of the notice of motion to produce requested the production of "all reports of any kind in writing, including annual reports concerning the nature and extent of the Kress operation, profit and loss performance, goals, purposes, and the like, in the files of Kress Stores since 1960" (emphasis added). According to the affidavit of counsel for defendants, this language was specifically used in the event plaintiffs were claiming that the term "annual reports" only applied to reports to directors or stockholders.
These motions were heard by the Court on an order shortening time on October 28, 1975. On the same date the Court entered its order requiring the production of the documents, including item No. 2, and the order was also served on plaintiffs' attorneys the same day. The order also provided that further answers should be furnished with respect to Interrogatory VI(a) and (b) in the second set of interrogatories. In response to the motion to compel further answers to interrogatories, plaintiffs' attorney stated on page 5 of his declaration[1] dated October 27, 1975, as follows:
"Defendants' objection to the answers to Interrogatories 1(a) & (c), 6(a) & (b), 7, 17, 18, 26, 27, 28(a), 32, 35, 23 and 47 fails to reveal in what material manner such interrogatories have not been answered. Plaintiffs submit that a review of these answers will reveal that said interrogatories were either fully answered, substantially answered, or simply contain an answer that defendants do not like."
In response to the Court's order, counsel for defendants received on November 12, 1975, a letter from plaintiffs' counsel of the same date, in which the following statement was made:
"1. Annual reports for Kress from 1960 through 1968. Kress was merged into GENESCO in March of 1970; however, there may be an annual report for 1969 in Nashville. At the present time we do not have a copy of this document; however, it is being pursued in Nashville.
"2. Copies of annual reports to the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 for fiscal years ending 1964, 1965 and 1966. Additional years are probably in Nashville or in New York in the custody of Vince Cunningham at 730 Fifth Avenue. Further information will be provied [sic] if it is obtained."
In a letter to counsel for defendants dated November 13, 1975, from plaintiffs' counsel, the following statement was made:
"Further accounting records are being located and their custodian, volume and organization are being ascertained and will be delineated for you as soon as they are obtained. It should also be noted that according to my best information, no SEC reports for Kress Corporation were required after 1968 as they fell below 300 shareholders thereby obviating the necessity of filing such reports.
"Further information will be provided to you as it is obtained."
In another letter to counsel for defendants dated November 14, 1975, from plaintiffs' counsel, the following statement was made:
"As I have advised you since April, 1975, individual profit and loss statements for the Kress Stores were never prepared in 1971. Records from which profit and loss statements for each of the California stores could be prepared exist in storage in the New York offices of Kress Division. Mr. T. Lindemann *958 is one of the officers in New York familiar with these records. The records are available for inspection by your accountant in New York at your convenience."
Defendants received the SEC reports through 1968 of the financial condition of Kress.
After receipt of the letter of November 14, 1975, defendants' accountants, Wolf and Company, who have a New York office, contacted a Mr. Lindemann and were furnished some information pertaining to the profit and loss of the individual California stores for the year 1971. The accountants were never offered any reports showing the financial condition of Kress on an annual or monthly basis from 1969 to date.
On November 18, 1975, plaintiffs filed their third supplement of answers to defendants' second set of interrogatories. Interrogatory VI was answered as follows:
"Please attach the written reports, including the annual reports, since 1964 of the Kress Store division made to the Genesco Board of Directors.
"A. No such reports made to the Board of Directors.
"(a) If no report can be attached, please describe where such reports are located.
"(b) If no written report describe how the report is made to the Board of Directors of Genesco over the period of years referred to and by whom."
Interrogatory XLIX was answered as follows:
"Will you furnish the auditor's reports for the individual California Kress stores as well as the auditor's report on all of the overall Kress operations for the last ten years?
"A. No such reports exist for individual stores. No such reports exist for Kress Division subsequent to merger of Kress and GENESCO."
A status conference was held with the Court on November 20, 1975, in which the deficiencies of discovery in the case were discussed. Because of discovery difficulties, the trial date of December 15, 1975, was vacated and the matter was reset for trial on April 19, 1976. The failure to produce statements of the financial condition of Kress were discussed at this conference. At that time the Court directed plaintiffs' attorney either to furnish the documents or to file a declaration by a responsible officer stating that the documents did not exist and advising what documents did exist in the accounting files of Kress containing this financial information.
Thereafter defendants took the deposition of Mr. Fred Lang, whom plaintiffs represented to be knowledgeable concerning the Kress operation and the store-closing program. During Mr. Lang's deposition on December 16 and 17, 1975, a considerable number of questions were asked concerning the accounting records and reports containing the financial condition of Kress on an annual basis. At that deposition it was revealed for the first time that there were periodically prepared records within the Kress organization which showed the financial condition of Kress and which were submitted to the appropriate accounting officials at Genesco.
As a result of plaintiffs' continued failure to comply with the Court's order, defendants renoticed for January 8, 1976, a motion to produce and a motion for compliance with the Court's order of October 28, 1975. This motion to produce also asked for annual reports of the financial condition of Kress as well as the compliance with the Court's order of October 28, 1975. Defendants incorporated in their request the request that plaintiffs be required by court order to answer their interrogatories under oath by a responsible officer or employee and to file a statement under oath concerning the requested documents. This request was discussed at the hearing and the Court directed plaintiffs to produce the documents in question or furnish a declaration of a responsible officer under oath showing what documents did exist of this nature by the end of that week.
*959 In response to defendants' motions to be heard on January 8, 1976, counsel for plaintiffs filed a declaration dated January 2, 1976, in which the following statement was made on page 2:
"All annual reports of the Kress Division have been provided to defendants."
Thereafter, when no further information was forthcoming concerning the financial condition of Kress on an annual or any other basis after the year 1968, and no declaration of a corporate officer having been filed, defendants made two further discovery motions, including the present motion to dismiss. This motion was originally scheduled for February 19, 1976; however, because of calendar conflicts, it was continued and heard by the Court on March 4 and 11, 1976.
Plaintiffs never produced any financial records relating to the Kress division showing the financial status on any periodic basis after 1968. The only financial reports that were furnished were those that had been filed with the SEC through the year 1968. The crucial periods involved in the lawsuit relate to the time period after 1968.
Counsel for defendants advised counsel for plaintiffs on a number of occasions that defendants were not asking for SEC reports or, necessarily, the type of annual report that is furnished to stockholders of the corporation, but rather financial information within the company that would show the pertinent financial condition of Kress for the years after 1968. These statements were made in court during the arguments concerning these matters.
The declaration of James White, a Vice President of Genesco, filed March 2, 1976, states there was a financial statement for the year ending 1969 and that there are internal operating statements prepared for the Kress Division as there were for all operating companies of Genesco. Prior to the receipt of this declaration of Mr. White and plaintiffs' counsel's response to the Court's questioning on the hearing of this motion, there had never been any statement by counsel or anyone connected with Kress that these records would be furnished or could be inspected by defendants. The only response had been was that no such records existed after 1968.
The Court is only too aware that its dismissal of plaintiffs' case is an exceedingly harsh sanction. Yet the Court sees no other alternative to protect the integrity of its orders. A continuance of the trial date is simply no sanction at all. The trial had been originally set for December 15, 1975, but because of delays in complying with discovery requests, it was necessary to continue the trial date to April 19, 1976. To grant another continuance would in effect be a sanction against the Court because of the disruptive effect on the Court's calendar. Nor would fines be adequate. Plaintiffs have house counsel familiar with litigation who read the plain and unambiguous language of the Court's order of October 28, 1975, calling for obviously relevant material. To disregard that order, for reasons known only to plaintiffs, is a willful act which threatens the integrity of the judicial process. Imposing a fine under these circumstances would introduce into litigation a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that the withholding may not be discovered and, if so, that it would only result in a fine. For all of the reasons reflected in this Memorandum of Opinion and as shown in the extensive files in this case, there existed the extreme circumstances which mandated the dismissal of this action.
Plaintiffs and their counsel were repeatedly advised that if such records as were designated in the Court's order of October 28, 1975, were not in existence, then a responsible corporate officer must file an affidavit to that effect. Despite being so advised on a number of occasions, no such affidavit was ever forthcoming. Moreover, the Court on a number of occasions advised counsel for plaintiffs that if they did not comply with these very obviously relevant discovery *960 requests, the Court would have to consider the imposition of sanctions, including the dismissal of the action. Counsel and his clients were thus put on notice of this possible action of the Court. Despite this history, even when the monthly profit and loss statements were referred to by Mr. Lang during his deposition on December 16 and 17, 1975, the reports were not produced as was required by the order of the Court. That the reports should have been delivered cannot be denied. Not only were they not produced but, in response to a motion for their production, an ambiguous and under the circumstances misleading declaration was filed by plaintiffs' counsel on January 2, 1976, wherein it was stated that "[a]ll annual reports of the Kress Division have been provided to defendants."
The Court heard the parties on two separate occasions, read all of the affidavits submitted in connection with the motions, and was familiar with the records and files herein. Plaintiffs refused and failed to comply with the Court's order of October 28, 1975. They both failed to make discovery as required by Rule 37 of the Federal Rules of Civil Procedure and failed to comply with an order of the Court. For the reasons stated herein, the Court dismissed with prejudice the within action pursuant to Rule 37(b)(2)(C) and Rule 41(b) of the Federal Rules of Civil Procedure.
Good cause appearing therefor, IT IS HEREBY ORDERED that the above-entitled complaint and the action herein are dismissed with prejudice pursuant to Rule 37(b)(2)(C) and Rule 41(b) of the Federal Rules of Civil Procedure and with costs in favor of defendants.
IT IS HEREBY FURTHER ORDERED that counsel for defendants shall prepare an appropriate form of judgment in accordance with this Memorandum of Opinion.
NOTES
[1] Inexplicably the declaration referred to the interrogatories by Arabic-numbered designation rather than the Roman-numbered designation actually used.