**Rose V. BATSON**

v.

**NEAL SPELCE ASSOCIATES, INC.**

Civ. No. A–83–CA–089.

United States District Court,
W.D. Texas,
Austin Division.

April 21, 1986.

Connie Ode, Bunton, Nolan, Ode, Cooper, Austin, Tex., for plaintiff.

Rick Harrison, Brook B. Brown, McGinnis, Lochridge & Kilgore, Austin, Tex., for defendant.

## ORDER

NOWLIN, District Judge.

Before the Court is the Defendant's Motion on Remand and Motion for Attorney's Fees and Costs Associated with Various Discovery Actions and the Securing of a Supersedeas Bond. The Court has considered the Motions as well as the response of the Plaintiff and the evidence adduced at a hearing on these motions, and hereby enters the following findings and order.

This cause was set for trial on April 16, 1984. On April 12, 1984, the Defendant filed a Motion for Sanctions alleging a variety of discovery abuses. The Court heard the Motion on April 16, 1984, prior to beginning the trial. Based upon the evidence adduced at that hearing the Court dismissed the cause of action pursuant to Rule 37(b) and (d) and awarded attorney's fees and costs. On May 22, 1984, the Court entered Findings of Fact and Conclusions of Law dismissing the action and awarding $30,950.93 in costs and attorney's fees. The Court filed Amended Findings of Fact and Conclusions of Law on July 27, 1984. The Plaintiff's First Amended Motion for New Trial and Reconsideration was Denied on August 20, 1984. On September 12, 1984, the Plaintiff filed Notice of Appeal and a Motion for Stay of Judgment/Order. On October 2, 1984, the Court granted the Plaintiff's request for a stay conditioned upon Plaintiff filing a bond in the amount of $35,084.57. On December 12, 1984, the Defendant moved for collection of the judgment because the Plaintiff had not tendered the bond into the registry of the Court. On December 19, 1984, the Defendant tendered the bond, two and one-half months after the conditional stay was granted, thereby rendering the Plaintiff's Motion for collection of judgment moot.

On July 18, 1985, the United States Court of Appeals for the Fifth Circuit affirmed this Court's decision to impose sanctions on the Plaintiff, 765 F.2d 511, but vacated the dismissal and remanded because the record indicated that the Court had failed to consider "whether a sanction less drastic than dismissal with prejudice would not have equally punished [the Plaintiff] and served the deterrent purposes of Rule 37." In addition, the Circuit Court vacated the attorney's fee and expenses awarded by this Court and remanded "with instructions to reconsider the assessment of expenses, including attorney's fees...." In their opinion the Circuit Court noted that this Court "had assessed attorney's fees under Rule 37 for discovery matters which were not related to [the Plaintiff's] failure to comply with the Court's [discovery] order." The Court noted that the "extraordinarily large assessment of expenses in this case appears to be unreasonable on its face." The Court directed that articulable reasons for the assessments must appear in the record if this Court elected to award fees and expenses on remand.

On remand the Defendants argue that the only appropriate sanction in this case was and is dismissal. They argue that the following facts make this sanction appropriate:

The Plaintiff chose to ignore the duty placed upon her by the two subpoenas issued for the production of documents; she appeared at her rescheduled deposition set shortly before trial and refused to produce subpoenaed documents based on a claim of privilege, asserted orally for the first time at the deposition having previously made, for a year's period, numerous written and oral commitments to produce the sought-after documents; when finally ordered by the court to produce, chose to continue to refuse to produce, in part, and to delay in production of what documents were produced, though trial was scheduled for the following week; failed to comply with the Court's order to produce and offered no valid excuse for non-production in accordance with the Court's order; wholly precluded Defendant from discovering material evidence which would show substantial offsets to her damage claim; and, absent an order precluding her from proof of her damage claim, would put the Defendant to trial without due discovery, or cause a continuance of the trial of the case. They argue that requiring them to try their case under such circumstances would not be just. Further, to grant a continuance of a cause which had been set for trial for three months solely because of Plaintiff's own obstinance in discovery would not serve the deterrent purposes of Rule 37, but would, rather cause other litigants to believe that a continuation would be granted if discovery was withheld up to the trial date, even in the face of a Court order to produce.

In addition, the Defendant has moved for attorney's fees and costs associated with various discovery actions and the securing of the supersedeas bond. Specifically, they seek $2,008.00 in attorney's fees and expenses incurred in opposing the Plaintiff's Motion to Quash the depositions of Dr.

Paul Whitelock. In addition, they seek $125 in fees incurred when they were forced to file a Motion to Quash depositions due to Plaintiff's refusal to reschedule depositions of Neal and Bennett Spelce. This Court granted that Motion and the depositions were rescheduled. Further, the Defendant seeks $1302.50 in fees and expenses incurred when they attempted to execute on the judgment after the Plaintiff failed to post a supersedeas bond.

The Defendant further moves for additional attorney's fees on the basis that the Plaintiff litigated in "bad faith," pursuant to *Rodeway Express, Inc. v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980), or, in the alternative on the ground that the Plaintiff's action is frivolous, unreasonable or without foundation under *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

The Plaintiff argues that no circumstances exist which warrant imposition of sanctions in connection with the depositions of Neal and Bennett Spelce or Dr. Whitelock. She argues that the failure to promptly post the supersedeas bond was due to Plaintiff's inability to secure the funds required for the bond. Further, the Plaintiff argues that dismissal is not an appropriate sanction in this case and that this cause has not been litigated in bad faith.

## FINDINGS OF FACT

### A. *Appropriate Sanctions*

■. 1. The Court has considered Plaintiff's alternate suggestion that trial of this case be bifurcated so that a separate trial be conducted as to liability on the original trial date and a later second trial on damages after Plaintiff produced the required discovery. Plaintiff's proposal to bifurcate trial is not an appropriate sanction. The Court finds that separate trials of liability and damages would unduly lengthen these proceedings. This case involves only the Plaintiff's personal cause of action as to a single, isolated employment decision of the Defendant; there are no class claims urged

nor any request for injunctive relief on behalf of others nor any recurring employment activity. The only reason that would warrant separate trials of liability and damages is Plaintiff's failure to provide discovery. Second, absent good cause, the Court would not consider putting a Defendant to trial on liability issues without first allowing the Defendant adequate discovery of damages. To do so would preclude Defendant from adequate assessment of the seriousness of the case and would preclude potential summary judgment or settlement opportunities prior to trial on the liability issue.

█ 2. Delay of trial is not an appropriate sanction here. First, there is no assurance Plaintiff will comply with Court ordered discovery even if given additional opportunities. Another promise to produce is not persuasive to the Court in light of Plaintiff's numerous prior unkept promises and her blatant defiance of a Court order. The record reflects that Plaintiff was asked numerous times by her counsel to prepare the needed information for production; she refused. Even though the Plaintiff's books and records had been reviewed by Plaintiff's accountant in the summer of 1983, and a financial statement had been prepared in November, 1983, the books and records were not made available to Defendant. Even after this Court ordered Ms. Batson to produce the financial records, she refused. The request for production of the books and records had been outstanding for approximately one year when the Court was forced to order production of those documents. Plaintiff's counsel stated that it was not until the week of March 26, 1984, almost a full year after the initial subpoena, that *any* efforts were made between Plaintiff and her counsel to jointly review the underlying documents and prepare them for production to Defendant. This case was set for trial for the week of April 16, 1984, by Court order dated January 17, 1984. When Defendant issued notice of the resumption of Plaintiff's deposition and notice that a subpoena duces tecum would be issued for the financial records, Plaintiff and her counsel were well

aware of the impending trial date and the necessity of production of the documents reasonably in advance of April 16, 1984. By the date of this Court's order to produce, Plaintiff was well aware of the necessity to do so before the trial date of April 16, 1984. Plaintiff did not produce in full the documents required by that order.

No facts indicate that Plaintiff would have responded promptly and completely even given a second order to produce. Plaintiff had already delayed production for almost a full year when the order to produce was filed. Her counsel's statements indicate that Plaintiff was repeatedly advised of her obligation to produce the documents. Plaintiff did not readily produce in full the outstanding discovery upon entry of the Court's order, nor upon presentation of the Defendant's motion for sanctions. The Court can only conclude that Plaintiff made a deliberate, intentional decision not to produce in violation of this Court's order and contrary to the advise of her own counsel. Consequently, the Court cannot find that a second order to produce would have gained Defendant's access to the materials, or that any of the excuses given for non-production in response to this Court's order have merit. Finally, an offer to produce now what Plaintiff has wilfully chosen not to produce is, at best, an effort to escape the consequences of noncompliance by offering to do what Plaintiff was bound to do in response to the April, 1983 subpoena. Dismissal under these circumstances is not only appropriate, in light of Plaintiff's recalcitrance, but essential in order to maintain the integrity of the Court's orders.

█ 3. The Court finds Plaintiff's refusal to produce was intentional and deliberate. Promises of timely production were made by Plaintiff each time Defendant questioned when the production would be forthcoming. Plaintiff never told Defendant that she had no financial records. Plaintiff asserted privilege to the requested production only after her deposition began, almost a year after the documents were

originally subpoenaed. Plaintiff's Motion to Quash did not show any substantial grounds for the assertion of a privilege. The Court must conclude from these actions that Plaintiff had no bona fide claim of privilege but intended only to delay production of discoverable material to the Defendant.

4. The Defendant was clearly harmed by the delay. Defendant was made to guess at the potential liability it would face at trial for over one year. Plaintiff asserted lost income in excess of $40,000 per year and a negative income for the last six months of 1981 subsequent to her termination. Based upon this assertion, Plaintiff's claim would be approximately $120,000 plus attorney's fees when this cause was set for trial. In April of 1983, Plaintiff's deposition led Defendant to believe that she had made no money from her business. The discovery which was made in late 1983, however, indicated Plaintiff's income was substantial. In fact, her income statement showed sales of over $150,000 in 1982 from a business she had started in late 1981. These sales were clearly known to Plaintiff when she was deposed for the first time in April, 1983. Withholding this information wholly precluded the Defendant's timely evaluation of its potential liability. Absent this information, Defendant could not evaluate settlement possibilities, the potential for summary judgment or otherwise evaluate the potential claim and the costs to be devoted to defense.

The Court finds that withholding this information was done in bad faith. Plaintiff clearly testified at the deposition on April 12, 1983, that she maintained ledgers of accounts receivable and payable. No credible explanation has been presented to the Court as to why these records were not timely produced.

5. Plaintiff's failure to produce not only denied Defendant discovery as to relevant, material evidence, but also caused substantial inconvenience to the Court and Defendant. Because non-production extended to the day of trial, and involved

willful and unexcused disobedience of a court order to produce, any sanction short of precluding Plaintiff from proof of damages or dismissal would encourage other litigants to conclude that delay of production is an appropriate method of assuring a delay of trial. It might also lead other litigants to conclude that such unjustified behavior on the part of a litigant would not lead to an appropriate sanction. Under the facts of this case, any sanction other than precluding Batson from offering proof of her lost income or dismissal would require the Court to grant a delay of trial solely because of the Plaintiff's recalcitrance in obeying this Court's discovery and pretrial orders. It would indicate to other litigants that this means of securing a delay of trial would be tolerated by this Court, and would thus frustrate the deterrent purpose of Rule 37.

6. The reasons outlined above demonstrate that imposition of monetary sanctions coupled with a delay of trial is an insufficient sanction when a litigant has failed to provide court ordered discovery on the eve of trial. This combination of sanctions would place a party who could afford to pay or who gained monetary benefit by delay in the position of deciding whether to "obey" or or "pay." Consequently, the discovery process and this Court's docket would be stymied. *Cf. G–K Properties v. Redevelopment Agency of City of San Jose,* 409 F.Supp. 955 (N.D.Cal.1976):

> Imposing a fine under these circumstances would introduce into litigation a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that the withholding may not be discovered and, if so, that it would only result in a fine.

*Id.* at 959.

In view of the Plaintiff's inexcusable refusal to produce Court ordered discovery on the eve of trial, a continuance of trial together with the payment of attorney's fees and expenses is not a sufficient sanction to punish the defendant and protect the deterrent interests of Rule 37.

### B. *Plaintiff's Bad Faith*

■ 7. Based upon the record in this cause, the Court finds that Plaintiff's failure to produce evidence as to her post termination income was wilful and the result of a conscious effort on Plaintiff's part to hinder the Defendant's discovery as to the legitimacy of her claim of damages. The Court finds that Plaintiff is a person capable of operating a business with sales in the range of $150,000 per year which employs several people. Plaintiff is neither a naive nor indigent litigant and has been represented by counsel throughout this case. The record reveals that Plaintiff's counsel informed Plaintiff of her duty to respond and, indeed, pleaded with her on several occasions between April, 1983 and November, 1983, to get her records in order and produce them to Defendant. Finally, in December, 1983, Plaintiff produced a single page financial statement prepared by her accountant. Though the preparation of the financial statement would indicate her books and records were in order, the books and records were not produced.

■ 8. In November, 1983, Plaintiff indicated her accountant would testify as to her lost wages. Defendant promptly requested the opportunity to review the Plaintiff's books prior to deposing the accountant. When Defendant learned in January, 1984, that Plaintiff's counsel could not state when the books would be produced, Defendant renoticed Plaintiff's deposition and a subpoena duces tecum was issued. On the date for this deposition, Plaintiff appeared but did not produce her books and records. She explained her failure to produce the records by claiming for the first time that they contained privileged information. Plaintiff's privilege, if any, had long since been waived as it was never asserted in response to the initial subpoena.

Ms. Batson's second deposition was resumed solely to inquire into the nature of her interim income. Ms. Batson knew, since her first deposition in March, 1983, that she would be deposed again with respect to her interim income. Ms. Batson appeared at that deposition without the subpoenaed records stating as excuse for non-production that her counsel had not had adequate time to review the documents to determine whether privilege existed. This excuse was made even though the subpoena for production for the resumed deposition had been outstanding for nearly a full year. Plaintiff did not file a motion to quash or motion for protection prior to the deposition. Her deliberate recalcitrance to Defendant's discovery of her income was further shown by her following statements at this deposition:

(Questions by Defendant's counsel; answers by Ms. Batson unless otherwise indicated.)

Q. All right. You don't have an accounts receivable ledger available to you?

A. I do have an accounts receivable ledger available to me.

Q. All right.

A. But we're not willing to provide it to you.

[Batson deposition 3/30/84, p. 11]

Q. What is what's been marked as Defendant's Exhibit 2?

A. These are statements from Kimes and Spears, my CPA firm, for professional services rendered for our company. These are not complete. These were the—they were the only ones that we could find, but there are some that are missing.

Q. How do you know that?

A. Because I know that we incur—or Lorrie and I know that we incurred those expenses, but there are no statements to back them up. The statements are somewhere in our offices. Some of our records are put into archives when they're older, so we don't necessarily have immediate access to them.

Q. Where do you store your archives?

A. In a storage room in our office in boxes.

Q. Okay. So it's a matter of going into the storage room and pulling the boxes out to look for something?

A. Yes.

Q. And you chose not to do that?

A. We simply didn't have time.

[Batson deposition 3/30/84, p. 29]

Q. Okay. Why are the names blotted out on the W–2's?

A. I consider that privileged information.

Q. Well, unfortunately I don't, so if you will, just tell me who the W–2's apply to.

[Discussion off the record]

MR. HARRISON: How can that be proprietary, names of employees?

MS. ODE: I don't see how it's relevant to this particular proceeding, Rick.

MR. HARRISON: Are you instructing her not to answer?

MS. ODE: No, I have not done that.

MR. HARRISON: All right. Well, then I want an answer to my question.

QUESTIONS BY MR. HARRISON:

Q. I want to know who your employees were and how I can match them to these W–2's.

A. I won't answer that.

[Discussion off the record]

QUESTIONS BY MR. HARRISON:

Q. Are you going to answer?

A. No.

[Batson deposition 3/30/84, p. 29–35]

Q. And the schedule—copy C, the non-employee compensation, who does that refer to?

A. That would refer to people who worked on a temporary basis.

Q. Who were those?

A. Again, I—I'm not going to answer any questions about identity of employees.

[After Plaintiff finally agrees to provide the names, the following questions and answers were given:]

·Q. Well, let's start off first with Defendant's Exhibit 32, the cover page there. You don't know who made $6,700 with your company in 1983?

A. No.

Q. And you can't look at any of these total amounts in the far right-hand column and determine who that would have applied to?

A. Not without the name.

[Batson deposition 3/30/84, p. 37–43]

■ 9. Although Ms. Batson was served with a subpoena duces tecum several weeks in advance of the deposition, she made no effort to assert any privilege by motion, nor did she discuss with Defendant the claimed privilege or indicate that she would assert a privilege. During the year the first subpoena remained outstanding, Plaintiff made no effort to secure Defendant's agreement to limited production or even to discuss production alternatives. The Court concludes that Plaintiff's belated claim of privilege was not asserted in good faith but solely as yet one more excuse for delay in production.

At the March 30, 1984, deposition, Ms. Batson was unable to state the amount of monetary damage she would seek at trial. She was unable to state whether she or her firm had bought the 1983 Buick Riviera which she was driving or whether her car expenses were paid for by herself or by her firm. The deposition was recessed for one week. These same questions were asked a week later, nine days before trial. Ms. Batson was still unable to respond. She could not state her salary from the firm for the years 1983 or 1984. She had not determined what portion of her car payments had been paid by the corporation. While she said her accountant had the information, she also stated that she had not obtained the information from him for the deposition. Plaintiff continued to assert privilege from production at the April 7, 1984 deposition. The Court concludes that these depositions were virtually useless to Defendant's objective of firmly establishing the validity of the financial statements previously supplied by Plaintiff, and hence, her interim income. This objective was clearly known to Plaintiff's counsel from Defendant's prior correspondence.

10. The affidavit of Mr. Kimes, Plaintiff's accountant, indicates that he re-

viewed Ms. Batson's books in the summer of 1983 and prepared her income tax returns. No reason is offered as to why the books could not have been produced at the depositions. Mr. Kimes also states that he was not asked to prepare a financial statement until November 17, 1983, some seven and one-half months after the first subpoena was issued. He states: "Ms. Batson informed me on or about November 17, 1983 in a meeting in my office that she needed a statement of operations for a pending law suit in which she was Plaintiff." On the other hand, Ms. Batson's counsel indicated that from the time of the first deposition she continually demanded that Ms. Batson produce the books and records which had been promised to Defendant. Apparently, Ms. Batson ignored her counsel's advice that the books would need to be produced.

11. Plaintiff asserts the tardiness of her accountant in getting her books in order as an excuse for non-production during the relevant period. Her accountant, however, states in his affidavit that he was unaware of the need for production of Ms. Batson's books and records until the week of *March 26, 1984*. In his affidavit, he stated:

It was during the week of March 26 through March 30, 1984, that I became aware of the exact nature of Ms. Batson's lawsuit. Once I understood the nature of the lawsuit, I then realized the type of information which would be required by the Court before it could properly address the issue of damages. The work we had done for Ms. Batson, up to this point in time, had been related to the preparation of her income tax returns and a general review of the records which were prepared by obvious mistakes, such as accounting distributions and posting errors.

The Court is of the view that Ms. Batson never informed her accountant of the need to produce her books and records until March 26, 1984, one week prior to her rescheduled deposition.

12. Another disparity appears in the September-November 1983 time frame. By letter dated September 9, 1983, Ms. Batson's counsel states, "Rose told me that her accountant promised her a financial statement some time this week." (Odé letter to Harrison, dated 9/9/83, attached to defendant's response to Plaintiff's Motion to Quash Notice of Intention to Resume Deposition of Plaintiff). However, it appears from Mr. Kimes' affidavit that Ms. Batson did not even ask him to prepare a financial statement until November 17, 1983; more than a month after Ms. Batson's apparent representation to her counsel that the statement would be forthcoming within the week.

13. In November, 1983, Plaintiff notified Defendant that she would ask her CPA to testify as to her damage claim. On November 21, 1983, Defendant sent a letter to Plaintiff's counsel stating, "[s]ince you have indicated you intend to bring a CPA as a witness regarding her earnings, I would appreciate the opportunity to examine all of Rose's records from which he will be testifying, including her ledger books."

According to Mr. Kimes' affidavit, he delivered a statement of operations for the periods January 1, 1983 through October 31, 1983 at the end of November, 1983, and then, "[w]e did not do any more work regarding these financial records until *March, 1984*." Apparently, no communications occurred between Ms. Batson, her counsel and her accountant on this matter.

14. The Court further finds that in her deposition in April 12, 1983, Rose Batson stated that her business had not made any money in 1981, that she "had no idea" what she had made in 1982. In fact, Plaintiff's sales in 1982 exceeded one hundred and fifty thousand dollars, as shown by the financial statements she produced in December, 1983. It was not until Plaintiff finally produced these financial statements in December of 1983 that Defendant was put on notice that there could be a substantial offset to Plaintiff's damage claim. By that time, Defendant had completed all discovery except for Plaintiff's deposition as to her income and production of her books.

15. On February 15, 1984, Mr. Harrison wrote to Plaintiff's counsel stating that he wanted to complete Plaintiff's deposition if her 1982 tax return had been filed. Ms. Ode replied to Mr. Harrison on February 22, 1984, that "[A]t this time I do not know the status of her books or of her 1982 Schedule C." Five days later Defendant renoticed Plaintiff's deposition, accompanied by notice that the same subpoena used for Ms. Batson's original deposition would again be issued. This March 30, 1984, deposition is that in which Ms. Batson appeared and claimed a "misunderstanding" with her accountant as to what was to be produced.

■■■ 16. These facts have convinced the Court that Ms. Batson's failure to produce was the result of a deliberate and willful plan on her part to deny Defendant discovery of her substantial post-termination income. The Court can only conclude from her refusal to produce material evidence in her possession that Ms. Batson's damage claim is without merit. The record shows Ms. Batson's repeated refusal to produce material evidence and apparent disregard for her own counsel's repeated instructions that production would be necessary. The Court finds that Ms. Batson was informed of the need to produce her books and records at her first deposition in March, 1983, and that her counsel repeatedly warned her of her obligation to produce the records, and therefore must conclude that Plaintiff chose not to produce while representing to her counsel and Defendant that production would be forthcoming. Consequently, this Court is of the opinion that Ms. Batson's refusal to produce was willful and made in bad faith. Despite warnings by her counsel and this Court's order to produce, Plaintiff failed to produce her books and records.

As stated in the drafters' comments to the 1983 amendments to Rule 26:

> The purpose of discovery is to provide a mechanism for making relevant information available to the litigants. 'Mutual knowledge of all the relevant facts gathered by both parties is essential to proper

litigation. *Hickman v. Taylor*, 329 U.S. 495, 507 [67 S.Ct. 385, 391, 91 L.Ed. 451] (1947). Thus the spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses. All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.

Plaintiff's actions have caused substantial needless expense on Defendant's part, in committing more funds to its defense than the ultimate damages would justify. It is a common practice, where litigation costs are insured, to make such evaluations of claims and amounts to be spent in defense. The same assessments are made by attorneys and parties where private parties must bear the costs of defense. Had Defendant been able to discover in a timely manner the true nature of Plaintiff's post termination income, it would have chosen to limit its defense to an attack of the damage claim, perhaps presented summary judgment on the damage claim or otherwise tailored its defense to the dollar amount at risk.

■■■ 17. The Court also finds bad faith in Ms. Batson's refusal to produce in response to the Court's order. Plaintiff had nine days to respond to the Court's order to produce the documents; she chose not to respond. None of the excuses given are substantial or show inability to produce. Plaintiff indicated to this Court that once the motion for sanctions was filed Plaintiff ceased all efforts to produce. The Court finds this action extremely curious in that most parties would have doubled their efforts to make sure that production occurred upon the filing of such motion. The Court can only conclude that again, Plaintiff chose not to produce and that such choice was a wilful and knowing disobedience to this Court's orders.

18. The Court also finds bad faith in the fact that at some point during the discovery period, Plaintiff made a knowing, deliberate, but undisclosed choice not to produce the information sought by Defendant. Plaintiff's counsel stated at the March deposition, that a decision was made by Ms. Batson to produce only documents that Ms. Batson chose to produce, not those which Defendant had sought through the discovery process.

(Ms. Ode): "Rose and I met with Mr. Kimes on Monday afternoon to attempt to put together the documents that we thought would be helpful to you and that we did not feel were proprietary or an invasion of Rose's trade secrets ... I'm not going to open up her books and records just point blank to you. I think that's an invasion of her privacy and it's not necessary." (3/30/84 deposition, p. 6) "Q. You don't have an accounts receivable ledger available to you?

A. (Ms. Batson:) I do have an accounts receivable ledger available to me.

Q. All right.

A. But we're not willing to provide it to you." (3/30/84 deposition, p. 11)

At no point did Ms. Batson reveal this intention on her part to Defendant. At no point did Ms. Batson seek to discuss with Defendant any claimed privilege with respect to production or to discuss any alternative to production. No notice was given to Defendant during this almost full year period that any privilege would be asserted. The Court finds these actions to have been in bad faith, undertaken solely to gain some advantage in the discovery process. Had Plaintiff had a truly legitimate claim of privilege, common sense dictates that it would have been promptly and vigorously asserted.

19. Further, the Court finds bad faith in Plaintiff's conduct at her resumed deposition which reveals a deliberate recalcitrance to participate in proper discovery. At this deposition, Defendant asked whether her books and records were available to her to produce. She responded that they were, but that she was simply not willing to provide them to Defendant. Plaintiff refused to identify salaries paid to named employees. Plaintiff refused to identify the persons to whom she paid fees in the nature of third-party contract services. The financial statements indicate that these fees amounted to more than tens of thousands of dollars of expense per year and would be questions well within the bounds of relevancy of her interim income. Plaintiff also indicated that although the subpoena had been outstanding for more than a year, she had not had time to look in the storage closet in her office to gather statements from various professionals for services which Plaintiff charged against her business income. Ms. Batson was unable to state whether she or her firm paid for her automobile, nor had she produced any backup for the amount spent for "business promotion and entertainment."

20. Moreover, the Court finds bad faith in the many and varied and conflicting excuses given by Plaintiff for nonproduction. In her deposition she stated she was not willing to produce. In documents to this Court she has stated that she believed the financial statements to have been sufficient production. In other documents to the Court she indicates her CPA misunderstood what information was necessary to be produced. In the brief to the appellate court she indicated that the reason for nonproduction in response to this Court order was inability to make xerox copies of the production in time for production. With these various excuses, the only rational conclusion one may make is that no firm legitimate reason existed for nonproduction. Ms. Batson's total lack of cooperation at her resumed deposition, taken solely for the purpose of inquiring into her income, also indicates her bad faith recalcitrance to do those things a party is obligated to do when suit is filed.

21. The Court may also presume bad faith and lack of merit in Plaintiff's damage claim from the ultimate refusal to produce the requested discovery. The law creates a presumption that a claim is unfounded and brought in bad faith when

material evidence as to the claim has been withheld. As stated by the Supreme Court in *Hammond Packing Company v. State of Arkansas*, 212 U.S. 322, 29 S.Ct. 370, 53 L.Ed. 530 (1909), the case upon which Rule 37 was founded, there is an undoubted right of the lawmaking power to create a presumption of fact as to the bad faith and untruth of a pleading to be gotten from the suppression or failure to produce when such proof concerns the rightful decision of a cause. *Id.* at 350–51, 29 S.Ct. at 379–80. The Court goes on to state that the presumption is that the refusal to produce evidence which is material to the administration of justice is an admission of want of merit in the claim. The evidence not produced in this case is clearly material to the determination of the sole relief sought by Plaintiff. This is not a case of a failure to prosecute a claim where, at most, there is nonfeasance on the part of a moving party. Here, the Plaintiff sought to move forward on her own claim while denying Defendant the opportunity to fully challenge that claim. Thus, her actions are not simple nonfeasance, but malfeasance.

### C. *Reasonable Attorney's Fees*

██ 22. On these facts, the Court concludes that Plaintiff should be precluded from presenting any evidence as to lost wages, and that Defendant should be compensated for the attorney's fees and costs expended in attempting to achieve compliance with its discovery requests. As noted in Findings of Fact Nos. 13 and 16, Plaintiff's failure to provide the requested documents at the initial deposition and her subsequent repeated, but sham, promises to provide the discovery, wholly precluded Defendant from assessing its risk in this case, assessing settlement and/or summary judgment potential on the grounds Plaintiff had incurred no damage. Had this information been made available to Defendant at the time of the first deposition, or reasonably soon thereafter, the Court is of the view that Defendant would have been able to end this suit by motion for summary judgment on the damage claim. Defendant was unable to do so sole-

ly because of Plaintiff's delay by means of sham promises to produce and ultimate bad faith refusal to produce. For these reasons, the Court finds an award of fees incurred by Defendant from and after the date the information should have been produced is appropriate. This date is the date of Plaintiff's first deposition. Defendant's affidavit shows these fees to be $30,120.50.

23. Findings of Fact Nos. 23–28 present additional grounds upon which some of these fees may also be assessed. Pursuant to Rule 37, the Court's finding that Plaintiff litigated this cause in bad faith and pursuant to the Court's inherent powers, Defendant is entitled to recovery of the following fees: (1) the response to Plaintiff's Motion to Quash Ms. Batson's third deposition notice and subpoena, $409.00; (2) preparation and argument of Defendant's motion for sanctions (first hearing: $2,269.00); (3) Defendant's fees associated with taking Ms. Batson's first and second depositions ($754.30 and $354.00, respectively), which proved wholly fruitless; (4) the needless deposition of Ms. Batson's husband to obtain Ms. Batson's portion of the jointly filed income tax return ($726.70); and (5) those fees associated with Defendant's trial preparation incurred during the pendency of the Motion for Sanctions, which trial preparation proved wholly fruitless as a result of Plaintiff's ultimate deliberate decision not to produce ($5,540.00). Regarding Item (5), had Plaintiff forthrightly and timely asserted a privilege, the issue of production would have been determined well in advance of the trial date. By delaying the assertion of privilege until the two weeks prior to trial, Plaintiff forced Defendant to prepare simultaneously for trial pending the outcome of the Motion for Sanctions and for hearing on the Motion. But for Plaintiff's delay in asserting privilege, the trial preparation fees would not have been incurred prior to a ruling on the Motion for Sanctions. Ultimately, because Plaintiff chose not to obey the trial Court's order, a decision known only to her, these fees were incurred for no reason. These fees include only the time spent by Defend-

ant's attorneys in preparation for trial on the merits in the two weeks preceding April 16, 1984, the scheduled trial date.

24. The Court finds the above fees to have been incurred as a result of Plaintiff's failure to produce in response to Defendant's subpoenas and her ultimate failure to produce in accordance with the Court's order and are awardable under Rule 37(b)(2)(E). In addition, the fees associated with item 3) above are awarded under Rule 37(a)(4). The fees associated with item 3) and 4) are also the result of Plaintiff's bad faith failure to produce.

25. The Court further finds that Plaintiff's actions in causing Defendant to depose her husband in order to secure copies of the portion of Plaintiff's joint income tax return applicable to Plaintiff caused needless expense. Plaintiff could have secured the returns herself; she provided portions of later returns herself after the initial deposition of her husband. Defendant's testimony shows the taxable court reporter fees associated with taking this deposition to be $330.70 and the associated attorney's fees to be $396.00.

26. The Court also finds the Defendant entitled to attorneys' fees associated with its efforts to take the deposition of Plaintiff's psychiatrist. Plaintiff opposed this deposition on grounds of privilege. Those grounds were wholly unfounded as Plaintiff clearly authorized Defendant's chief officers, Bennett and Neal Spelce, to consult with her psychiatrist, thus waiving any claim of privilege. Defendant also advised Plaintiff's counsel of its reading of the law that waiver had occurred and asked for her response. Only after no response was made did Defendant notice Dr. Whitelock's deposition. No request was made by Plaintiff to limit the deposition to those conversations which had occurred between Defendant's officers and Dr. Whitelock. No circumstances show that an award to Defendant would be unjust or that Plaintiff's opposition to the deposition was substantially justified. These fees total $2,008.00.

27. Plaintiff also caused the Defendant to incur substantial needless expense in regard to Plaintiff's deposition of Neal and Bennett Spelce. On September 9, 1983, Plaintiff noticed the depositions to be taken on September 19 and 20, 1983. Defendant's counsel promptly informed Plaintiff of the respective schedules of the Spelces, of his trial schedule, of his co-counsel's trial schedule, and that due to pre-existing commitments of the deponents and their counsel, either the two deponents involved and one or the other of the two lawyers handling the case could not be available until October 20, 21, 27 or 28. Plaintiff insisted on maintaining the originally noticed depositions, thereby forcing Defendant to file a Motion to Quash. This Court was then forced to intervene which should have been worked out by counsel and enter an order setting the deposition date for October 20 and 21. Defendant incurred fees of $125.00 in obtaining the order quashing the deposition notice. No circumstances justify the Plaintiff's actions in this matter, nor does their opposition persuade the Court that their failure to cooperate was justified or reasonable.

28. The Court further finds that Plaintiff caused substantial needless expense to Defendant by her post judgment actions. This Court granted Plaintiff's Motion for a supersedeas bond on October 2, 1984. Two months subsequent to entry of the supersedeas order, the Plaintiff still had not filed the bond; consequently, the Defendant was forced to seek collection of the judgment. After execution had been returned and the Defendant had moved for execution on Plaintiff's corporate stocks, Plaintiff finally filed a supersedeas bond. The Court would also note that the supersedeas order tendered by Plaintiff would have this Court order a clearly unauthorized supersedeas because it did not condition the supersedeas upon the filing of the bond but, by its terms, would supersede the judgment so long as a bond was filed by a date to be chosen by the Court. This relief is clearly unauthorized as Fed.R.

Civ.P. 62 allows for supersedeas only upon the filing of a bond approved by the Court.

29. The Court finds bad faith in Plaintiff's long delay in producing the items ultimately produced, her undisclosed decision to substitute what she herself chose to produce in lieu of the items subpoenaed, her total lack of cooperation at the time of her depositions, and the many varied and conflicting statements of excuse for nonproduction, (i.e. "did not have time to copy", "not willing to produce", "we thought financials would be sufficient"; "the CPA misunderstood", etc.).

30. The hours and tasks performed resulting in the above fee have been reviewed by the Court. The Court finds the hours to have been a reasonable number of hours to perform the tasks identified and finds the tasks identified were appropriate and necessary to the Defendants' case. The Court further finds that there is no duplication between the lawyers who have been involved in performing this work. The testimony shows that each lawyer was assigned specific tasks and that any conferences between the lawyers involved were those minimally necessary to keep each other apprised of relevant developments. Also, where appropriate, law clerks and legal assistants have been used. The Court finds the hours and tasks performed by nonlegal staff to be reasonable in relation to the work performed and that the work performed is necessary. The Court has reviewed the hourly rates charged and finds the rates charged reflect the difference and experience of the attorneys involved and are commensurate with the prevailing rates in the community for similar services. The Court further finds that the lawyers involved have the skills requisite to perform the legal services performed. The record will reflect the experience of both counsel in litigation and equal employment law matters. The testimony of counsel also indicates that they have been precluded from other employment by acceptance of this case, and that once undertaken, they have diligently pursued the case on their client's behalf.

The Court further finds that the Defendant has used the hours shown and rates shown as the basis for its billing to Defendant Spelce and that Defendant Spelce has been billed fees on such basis.

31. The Findings of Fact incorporated in the Court's prior opinion are incorporated herein by reference.

## CONCLUSIONS OF LAW

1. By the time of Plaintiff's resumed deposition, any claim of privilege as to production of documents subpoenaed almost a year previous had clearly been waived. Not only had Plaintiff failed to timely assert an objection to production, she had made numerous promises, without reservation, to produce the requested materials. Under these circumstances, any objection was clearly waived. *King v. Fidelity National Bank of Baton Rouge*, 712 F.2d 188 (5th Cir.1983); *Perry v. Golub*, 74 F.R.D. 360 (N.D.Ala.1976).

2. A district court is authorized by Rule 37 of the Federal Rules of Civil Procedure to preclude a party who has refused to produce in accordance with an order of the Court from supporting designated claims or from introducing designated matters into evidence. Fed.R.Civ.P. 37(b)(2)(B).

3. While the above sanction is tantamount to dismissal in this case, the Court, in its discretion, concludes that any lesser sanction than precluding Plaintiff from producing evidence on the damage issue would not serve the deterrent purposes of Rule 37. *National Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Sturgeon v. Airborne Freight Corp.*, 778 F.2d 1154, 1159 (5th Cir.1985); *Bluitt v. Arco Chemical Co.*, 777 F.2d 188, 190 (5th Cir.1985); *Kabbe v. Rotan Mosle, Inc.*, 752 F.2d 1083, 1084 (5th Cir.1985). The Court cannot conclude that Plaintiff would produce the relevant material if given another opportunity to do so. Further, the record in this case shows a clear pattern of contumacious conduct by the Plaintiff. The facts established in this record

clearly establish that a sanction less than one tantamount to dismissal would not serve the best interests of justice.

4. The Court, in its sound discretion, assesses attorney's fees against Plaintiff in the amount of $30,120.50, being the fees incurred by Defendant subsequent to Plaintiff's initial deposition, the date upon which Plaintiff should have complied with the subpoena to produce income-related documents. These fees are awarded under the Court's inherent power to assess attorney's fees where a litigant has pursued a claim in bad faith and where such bad faith causes substantial needless expense to the opposing party. Where the bad faith of a party causes added expense to a party, the Court may assess the attorney fees and costs incurred as a result of such maneuvers against the party acting in bad faith. *Rodeway Express v. Piper*, 447 U.S. 752, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980); *In re Plywood Antitrust Litigation*, 655 F.2d 627 (5th Cir.1981); *Lipsig v. National Student Marketing Corp.*, 663 F.2d 178 (D.C. Cir.1980).

█ Plaintiff's failure to comply with the Court's orders regarding discovery further justifies this award. Under Rule 37(b)(2)(E) of the Federal Rules of Civil Procedure, the Court is required to award the reasonable expenses, including attorney's fees, caused by a failure to obey a court order to produce against a party who has failed to comply with the Court order to produce unless the Court finds the failure was substantially justified, or that the award of fees would be unjust. The facts do not show Plaintiff's failure to produce in accordance with the Court's order to be substantially justified or that an award of fees would be unjust. The Court finds that an assessment of attorney's fees against Plaintiff in the amount of $10,053.00, those fees incurred as a result of Plaintiff's failure to comply with the Court's order, are justified under Rule 37(b)(2)(E) in addition to the grounds previously stated. These fees are those discussed in Finding of Fact No. 22 which also appear as the items under I.A–F of Defendant's Exhibit AA.

Item I(A) would also be awardable under Rule 37(a)(4).

█ Moreover, under Rule 37(a)(4) the Court must assess attorney's fees incurred in making or opposing discovery motions against the losing party unless the Court finds the unsuccessful motion or opposition to be substantially justified or that an award of fees would be unjust. The fees and expenses to be awarded under Rule 37(a)(4), in addition to those grounds previously stated, include fees in connection with Defendant's response to the Motion to Quash Dr. Whitelock's deposition. This amount appears as Item II.A. of Defendant's Exhibit AA and amounts to $2,008.00.

Items I.(D) and (E) of Defendant's Exhibit AA would also be awardable under Rule 37(g), in addition to those grounds previously stated, as Plaintiff's conduct at these depositions was tantamount to a failure to appear.

6. In addition to the award discussed above, the Court further concludes that the actions of Plaintiff in simultaneously failing to file a supersedeas bond and resisting execution on the judgment to have caused needless expense on Defendant's part. The Court also finds that the Plaintiff's attempt to have this Court enter a supersedeas order which is clearly unauthorized by the Rules to be in violation of Rule 11. The fees and expenses incurred in activities related to the ultimate filing of the supersedeas bond are $1,302.50.

7. A subpoena issued in connection with discovery is a Court order for purposes of Rule 37. *King v. Fidelity National Bank of Baton Rouge*, 712 F.2d 188 (5th Cir. 1983). The filing of a motion for protection from a subpoena does not dispense with the necessity to produce or appear in accordance with a subpoena. *Id.*

8. Consequently, the Court hereby awards $30,120.50 in attorneys fees incurred by the Defendant prior to the Courts dismissal of this action. In addition, the Court awards $1,302.50 in fees related to Plaintiff's failure to file a super-

sedeas bond, for a total award of $31,-423.00.

9. All Findings of Fact may be considered Conclusions of Law, if appropriate. All Conclusions of Law may be considered Findings of Fact, if appropriate.